Mariano Juarez **ROSALES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 69576.

Court of Criminal Appeals of Texas, En Banc.

Dec. 9, 1987.

Certiorari Denied June 30, 1988. See 108 S.Ct. 2917.

John J. Herrera, Houston, for appellant; Jose H. Rojo, Walter Boyd, of counsel.

John B. Holmes, Jr., Dist. Atty. and Kathlyn Giannaula and Keno Henderson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

WHITE, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A., Penal Code Sec. 19.03(a)(2). After finding appellant guilty, the jury returned affirmative findings to the first two special issues under Art. 37.-071(b), V.A.C.C.P. Punishment was assessed at death. We will affirm.

Appellant raises four points of error, none of which challenge the sufficiency of the evidence, thus, recitation of the facts is unnecessary.

In his first point of error, appellant contends that the trial court erroneously denied him indigency status for purposes of securing a free transcript on appeal in violation of Texas statutory law and the Due Process Clause of the U.S. Constitution. Appellant asserts two bases for this error. First, appellant contends that the right to an "automatic" appeal granted to death penalty defendants by Art. 37.071(h), V.A.C.C.P. includes an automatic right to a free transcript in order to perfect such appeal, regardless of the defendant's financial status. Second, appellant contends that the trial court incorrectly found him non-indigent. We find both contentions to be statutorily and factually unsupportable.

Article 40.09, Sec. 5, V.A.C.C.P. sets out the procedure for obtaining a free transcript.[1] Article 40.09, Sec. 5, effective since Jan. 1, 1966 in the same substantive form, states,

If a party desires to have all or any portion of a transcription of the court reporter's notes included in the record, he shall so designate with the clerk in writing and within the time required by Section 2 of this Article. Such party shall then have the responsibility of obtaining such transcription from the court reporter and furnishing the same to the clerk in duplicate in time for inclusion in the record and *the appellant shall pay therefor. The court will order the reporter to make such transcription without charge to appellant if the court finds*, after a hearing in response to an affidavit filed by the appellant not more than 20 days after giving notice of appeal *that he is unable to pay or give security therefor.* (emphasis added).

Under this statute, appellant has the burden of (1) filing an affidavit of indigency,[2]

---

1. Art. 40.09, Sec. 5, while effective at the time of the instant case, was repealed and replaced by R. 53(j)(2) of the Texas Rules of Appellate Procedure, effective Sept. 1, 1986, which takes the same substantive form.

2. In the instant case, the trial court held the indigency hearing upon counsel's oral notice of the need for such a hearing, with the proviso that appellant would later file his affidavit of indigency. Due to an oversight of counsel, appellant did not file his affidavit until months after the indigency hearing was held. This fact has no bearing on our disposition of the case since appellant made his alleged indigency known to the trial court in a timely manner.

and (2) sustaining the allegations in his affidavit at the indigency hearing. *Abdnor v. State*, 712 S.W.2d 136, 141 (Tex.Cr.App. 1986). Under this settled Texas procedure, all appellants are required to pay for their transcript unless they can prove to the satisfaction of the trial court their inability to pay or give security therefor.

▓▓▓▓ Turning to constitutional guidelines, criminal defendants, including death penalty defendants, do not have a due process right to an appeal. *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Abdnor v. State, supra;* 21 Tex. Jur.3rd, Sec. 1606, p. 402; 26 Tex.Jur.3rd, Sec. 4041, p. 305–309; 55 A.L.R.2d 1072. The right to appeal is purely statutory. *Galitz v. State*, 617 S.W.2d 949, 951 (Tex. Cr.App.1981); *Garcia v. Dial*, 596 S.W.2d 524 (Tex.Cr.App.1980). However, because Texas has chosen to statutorily provide appellate review, federal and state constitutions require that equal access be provided to appellate courts. *Griffin v. Illinois, supra; Abdnor v. State, supra; Guillory v. State*, 557 S.W.2d 118, 120–121 (Tex.Cr. App.1977). Equal access includes an adequate record on appeal. Article 40.09, Sec. 5, satisfies this constitutional requirement by providing a procedure whereby indigent defendants can obtain a free record. Thus, the purpose of this article is to provide equal appellate access to an indigent defendant by way of a free transcript to any defendant whose indigency prevents him from obtaining one. *Drummond v. State*, 675 S.W.2d 545–546 (Tex.App.—Houston [14th] 1984, pet. ref'd). The purpose is not to transfer to the taxpayer the cost of an appeal which an appellant himself can afford.

▓▓▓▓ With this law in mind, we now turn to appellant's first contention that death penalty defendants should automatically receive a free transcript in order to fully take advantage of their right to an "automatic" appeal under Article 37.071(h), V.A.C.C.P. Article 37.071(h) states,

Harriel v. State, 572 S.W.2d 535, 537 (Tex.Cr. App.1978).

3. See for example, Art. 37.071(h), V.A.C.C.P. (direct, automatic appeal provided to this Court

The judgment of conviction and sentence of death shall be subject to *automatic* review by the Court of Criminal Appeals within 60 days after certification by the sentencing court of the entire record unless time is extended an additional period not to exceed 30 days by the Court of Criminal Appeals for good cause shown. (emphasis added).

This statute grants death penalty defendants a direct appeal to this Court, rather than the ordinary direct appeal, granted to all other defendants, to the intermediate courts of appeals. Tex.Const. Art. V, Secs. 5, 6; Articles 4.03, 4.04, V.A.C.C.P. *Polk v. State*, 676 S.W.2d 408, 410 (Tex.Cr.App. 1984) appeal decided 693 S.W.2d 391 (1985); *Moore v. State*, 677 S.W.2d 550, 553 (Tex. App.—Amarillo, 1983, pet. ref'd), *cert. denied* 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116; 13 St. Mary's Law Journal 211; 26 Tex.Jur.3rd, Sec. 3906, p. 58–59. The term "automatic" refers to the fact that death penalty defendants are automatically granted review by this Court rather than having to petition for discretionary review, as is required by all other defendants. Tex.Const. Art. V, Sec. 5; Art. 4.04, Sec. 2, V.A.C.C.P.; Art. 44.45, V.A.C.C.P.; Tex. Crim.App.R. 302–304. Nothing in this statute mandates a free record on appeal or provides a death penalty exception to Art. 40.09, Sec. 5. Nor does Art. 40.09, Sec. 5, itself, set out any such exception.

Appellant further argues that because of the serious and final nature of the penalty to be imposed, due process requires special appellate procedure, by way of a free transcript, to be automatically provided to capital defendants. While this Court is constantly mindful of the severe consequences imposed by a death sentence, we must also acknowledge the Legislature's equally sober awareness of such a penalty. While the Legislature has chosen to give defendants who have received the death penalty some special statutory treatment,[3] they have not seen fit to draw any exceptions to

with priority review); Art. 35.13, V.A.C.C.P. (special voir dire procedure for capital cases); Tex.R.App.Proc.R. 40(b)(1) (death penalty cases do not require notice of appeal).

Article 40.09, Sec. 5, to provide death penalty defendants a free transcript automatically, regardless of their financial position. To the contrary, the Legislature purposely amended Article 40.09 in order to give the trial court discretion to deny a free transcript where indigency is not proven. The predecessor to Article 40.09, Sec. 5, was Article 759a, Sec. 5, which stated,

When a defendant in a felony case appeals and is not able to pay for a transcript of the evidence, he shall make an affidavit of such fact and *upon the making of such affidavit the court shall order* the official court reporter to make a Statement of Facts ...

In *Zamora v. State,* 165 Tex.Cr.R. 613, 309 S.W.2d 447 (1957), this Court held that under the strict wording of the statute, an appellant's right to a free transcript, upon proper presentation of a pauper's affidavit, was absolute. Under this statute not only was the trial court without discretion to deny a free transcript, but also had no right to conduct an evidentiary hearing to determine the truthfulness of the indigency affidavit. *Zamora,* supra; *Wallace v. State,* 138 Tex.Cr.R. 625, 138 S.W.2d 116 (1940); 55 A.L.R.2d 1072, 1109. An affidavit, standing alone, was sufficient to trigger an automatic order of a free transcript.

■ The Legislature, in response to the harsh results of *Zamora,* rewrote this article to its present Article 40.09, Sec. 5, form which gives the trial court complete discretion over the indigency determination. *Warminiski v. Dear,* 608 S.W.2d 621, 622–623 (Tex.Cr.App.1980). Thus, Texas, as well as most other states, vests the determination of indigency in the sound discretion of the trial court, rather than providing an absolute right to a free transcript. *See generally,* 55 A.L.R.2d 1972; 51 A.L.R.3d 1108; 66 A.L.R.3d 954.

■ In summation, due process and equal protection, as applied to the appellate process, require equal access to appellate courts, and Article 40.09, Sec. 5 fulfills this constitutional requirement by granting all indigent defendants, capital or otherwise, an opportunity to a free transcript when indigency is shown. No constitutional rights are in conflict with this valid procedural law and application of this statute does not deprive appellant of any constitutional rights. This Court is not a legislative body, and until the Legislature decides to amend Article 40.09 to provide all death penalty defendants an absolute right to a free record on appeal, this Court cannot sustain appellant's contentions. Tex.Const. Art. II, Sec. 1; *Ex parte Hayward,* 711 S.W.2d 652 (Tex.Cr.App.1986); *Ex parte Davis,* 412 S.W.2d 46, 52 (Tex.Cr.App. 1967).

Turning to appellant's alternate contention that the trial court erred in denying appellant indigency status, we find that the record of the indigency hearing supports the trial court's holding.

The determination of indigency is a matter resting in the sound discretion of the trial court, and therefore is reviewable only for abuse of such discretion. In absence of clear abuse, the judge's ruling will not be disturbed on appeal.

■ An indigency determination is to be made on a case-by-case basis, and this Court, speaking through Presiding Judge Onion, has made it unequivocally clear that any judicial attempt to set rigid standards will not be accepted. *Abdnor v. State,* supra; *Castillo v. State,* 595 S.W.2d 552, 554 (Tex.Cr.App.1980); *Zanghetti v. State,* 582 S.W.2d 461, 462 (Tex.Cr.App.1979); 26 Tex.Jur.3rd, Crim.Law, Sec. 4041, p. 308; 1 *Texas Criminal Practice Guide,* Sec. 1.01[3][b], p. 1–7; 4 *Texas Criminal Practice Guide,* Sec. 90.03[1][b], p. 90–21. While there are no exact standards for determining indigency, precedence requires the trial court to look at appellant's financial status at the time of appeal, not at the time of trial. *Barber v. State,* 542 S.W.2d 412, 413 (Tex.Cr.App.1976). Likewise, the court is to consider only the appellant's personal financial condition, not that of his parents, other relatives, friends or employers. *Ex parte King,* 550 S.W.2d 691, 694 (Tex.Cr.App.1977); *Drummond v. State,* supra; *Staten v. State,* 662 S.W.2d 672, 674 (Tex.App.—Houston [14th] 1983, no pet.).

■ The record reveals sufficient grounds for the trial court's determination that appellant had sufficient assets at the time of the hearing to obtain the $9,000–$10,000 needed to pay for the transcript. Two witnesses testified at the indigency hearing, appellant and his wife. A combined summation of their testimony follows. The few discrepancies between their testimony are noted.

Appellant owned a home, his homestead, worth somewhere between forty-five thousand to sixty-eight thousand dollars and on which he owed approximately seven thousand dollars. Appellant testified that this house was worth only forty-five thousand dollars, while his wife testified that it was worth sixty or sixty-eight thousand. Appellant's wife and her two sons lived in this house.

Appellant had recently sold Rocky's Bumper Exchange, his chrome-plating shop, for thirty-five thousand dollars, with the payment terms of ten thousand down and five hundred dollars monthly for the next five years. While appellant had sold this business, he still owned the land on which the business was located. No one testified to the value of this land.

Appellant had additional income of at least two hundred dollars a month from a five unit apartment complex, worth forty-five thousand dollars, which he also owned. A total of seven hundred dollars a month, gross, was received from these apartments, but appellant's wife testified that five hundred dollars of this income paid bills on the complex. Appellant testified that the mortgage owed on this complex was around twenty-five to thirty thousand dollars. Appellant also received an additional income of one hundred dollars a month from a previous business partnership with his brother.

Appellant also owned a small residential lot, for which he paid three thousand dollars, and his trailer house, worth somewhere between thirteen thousand and thirty thousand dollars was located on this lot. Appellant testified that the trailer house was worth thirteen thousand, while appellant's wife testified that it was worth thirty

thousand. No one testified to the present value of the lot. Appellant's daughter lived in the trailer house.

Appellant also owned four cars, a 1980 Lincoln Continental, a 1954 Chevrolet, a 1981 Honda and a 1985 Dodge Ram D–50 Pick-up truck. Appellant owed an undisclosed amount of money on the Dodge.

All of this property was community, owned by appellant and his wife.

Appellant and his wife had paid appellant's trial attorney fifteen thousand dollars, but still owed him fifteen thousand to be paid off on a monthly basis. Appellant testified that the total of thirty thousand dollars in attorney's fees was to cover the appeal if necessary, but appellant had been unable to contact his trial attorney at the time of the indigency hearing.

Appellant was represented by retained counsel at trial and, although he testified at the indigency hearing that he did not have money to hire appellate counsel, he is presently represented by retained counsel in this appeal. Although this fact is not dispositive of non-indigency, it is a factor to be considered. *Abdnor, supra; Hicks v. State*, 544 S.W.2d 424 (Tex.Cr.App.1976).

Appellant's wife was unemployed yet capable of working; however, she was not seeking employment. Both appellant and his wife testified that they had no money in the bank, thus no cash directly available to them to hire an appellate attorney or to pay for a transcript.

In summation, appellant and his wife had a total of eight hundred dollars a month income without either of them having to work. With this income, appellant's wife had to support herself, a fourteen year old son and possibly a twenty-three year old son who was "not in his right mind." There was no testimony as to the dependency of this twenty-three year old son or to the extent of his capabilities to support himself. Both sons lived with appellant's wife.

The trial court, in denying appellant indigency status, was correct in heavily weighing the fact that appellant owned property which could be sold or used as collateral.

Appellant himself never testified that he could not get the money to pay for a transcript, but only that at the present moment he did not have the cash available. Appellant conceded that he could obtain the money by selling some of his property. Appellant testified,

"Q. Are you asking this Court to— you know the record is going to cost nine or ten thousand dollars or thereabouts?

A. Uh huh.

Q. That is the transcript of the proceedings?

A. Yes.

Q. Are you able to pay that?

A. Not right now, like she (appellant's wife) said. No.

Q. Do you have any money you can pay on that transcript?

A. No, sir, not unless we sell one of the cars or something, and that's going to take a little while.

.    .    .    .    .

Q. Do you want a lawyer to represent you on appeal?

A. Well, right now I do, because I don't know if I will be able to hire one or something.

Q. Are you asking this Court—do you want to employ your own lawyer or are you asking this Court to appoint a lawyer for you?

A. I am going to have to talk to Mary (appellant's wife) and Mary will have to talk to my lawyers and if they want to employ one, they will employ one.

Q. The point is, do you have the money to employ one?

A. No, sir.

Q. Not whether your daughters or Mary do, but do you?

A. No, sir, I don't.

Q. Do you want a lawyer? That is the point—on appeal?

A. Yes, sir.

Q. All right now, have you paid Mr. Scheve (appellant's trial attorney) to represent you on appeal?

A. Yes, sir. He said if it came to appeal he was going to represent me and I had to pay him in payments." (explanatory parentheticals added).

Appellant complains of the trial court's emphasis on appellant's ownership of property. However, in determining appellant's indigency status, the trial court correctly considered appellant's assets. Appellant had available and convertable personal and real property which was clearly within his reach. He could, by his own testimony, sell or mortgage some of his property to obtain the money necessary for an appeal.

■ The fact that all the property was community owned presents no bar to its consideration as an asset. Contrary to appellant's contention, spouses provide an exception to the general rule that the financial position of relatives is not to be considered, especially in a case, such as this one, where an appellant's spouse is willing and able to help the appellant reach and convert assets. *Butler v. State*, 506 S.W. 2d 902 (Tex.Cr.App.1974); *Ex parte Mays*, 152 Tex.Cr. 172, 212 S.W.2d 164 (1948). See also *United States v. Sampson*, 161 F.Supp. 216 (D.C.1958); *United States v. Stone*, 298 F.2d 441 (4th Cir.1962), *cert. denied* 370 U.S. 927, 82 S.Ct. 1568, 8 L.Ed. 2d 506; *State v. Rutherford*, 63 Wash.2d 949, 389 P.2d 895 (1964). There was no evidence of a pending divorce or estrangement between appellant and his wife; thus, the community property and earnings of appellant's wife should also be considered. *Ex parte Mays*, supra. *But see People v. Chism*, 17 Mich.App. 196, 169 N.W.2d 192 (1969) (community property and assets of estranged wife who was unwilling to provide any help to the defendant with whom divorce was pending could not be considered).

After a careful review of the indigency hearing, we agree with the trial court that appellant was not indigent. While this Court is reluctant to deny appellants who are even remotely indigent a free transcript, we find, from this record, that if we were to overrule this trial court's finding of non-indigency, then we would effectively tie the hands of all trial courts to always find appellants indigent. Such an abroga-

tion of the trial court's discretion is not contemplated by Art. 40.09.

Appellant had numerous assets at his disposal from which to pay for his transcript. It would be repugnant to require the taxpayers to shoulder the cost of appellant's transcript when he could sell one piece of his property and pay for the same. Butler v. State, supra; *Ex parte Mays,* supra. *See also Still v. Justice Court of Slurlock Judicial District,* 19 Cal.App.3d 815, 97 Cal.Rptr. 213 (1971); *Peters v. McIntosh,* 80 N.M. 496, 458 P.2d 222 (1969); *State v. Sands,* 2 Or.App. 575, 469 P.2d 795 (1970). Appellant's first point of error is overruled.

■ We note, however, that almost two years have elapsed since the indigency hearing was held, and circumstances may have changed. A hearing may be held at any time during the criminal process if the trial court is placed on notice that there is a substantial change in the financial conditions that would alter appellant's monetary status. *Castillo v. State,* supra at 554; *Foley v. State,* 514 S.W.2d 449 (Tex.Cr. App.1974).

■ In his second point of error appellant contends that the capital murder statute pertaining to murder during the commission of a burglary, V.T.C.A., Penal Code Sec. 19.03(a)(2), and the simple burglary statute, Sec. 30.02(a)(3),[4] supra, are unconstitutional in that both statutes penalize the same conduct but provide different penalties. This argument is without merit. Appellant ignores the different application of the element of intent which distinguishes the two crimes.

Capital murder prohibits the *intentional taking of a life* during the commission of a burglary. *Hogue v. State,* 711 S.W.2d 9 (Tex.Cr.App.1986). *See, Smith v. State,* 540 S.W.2d 693, 697 (Tex.Cr.App.1976). On the other hand, the burglary statute under Section 30.02(a)(3) dispenses with any inquiry into the mens rea accompanying the underlying felony, which in this case would

be murder. The intent to *enter* provides the culpable mental state. *Day v. State,* 532 S.W.2d 302, 305 n. 1 (Tex.Cr.App.1975). See, *Lamb v. State,* 680 S.W.2d 11, 15 (Tex.Cr.App.1984). Thus, the statutes contemplate and properly penalize completely different mens reas. Appellant's second point of error is overruled.

■ In his third and fourth points of error, appellant joins his challenge to the validity of the indictment with his challenge to the trial court's denial of his motion to quash the indictment. Both contentions are based on the same argument. Appellant argues that the indictment is defective because it fails to allege the three special issues of Art. 37.071(b), V.A.C.C.P., thus failing to apprise him of the nature and cause of the accusation and failing to force the State to plead all elements necessary to be proven for imposition of the death penalty. We have recently addressed this very issue, adversely to appellant, in *Sharp v. State,* 707 S.W.2d 611, 624 (Tex.Cr.App.1986).

In *Sharp,* we held that the indictment need not allege the special issues of Art. 37.071(b). We stated:

Appellant is correct in his assertion that everything necessary to be proven to sustain a conviction *in the guilt/innocence phase* must be alleged in an indictment. However, the special issues of Art. 37.071, supra, are not an element of the offense of capital murder; Art. 37.071 relates only to punishment.

. . . . .

While the indictment must allege everything necessary to be proven to sustain a conviction, it need not state more.

707 S.W.2d 624–625.

The instant indictment is sufficient without alleging the special punishment issues. Appellant's third and fourth points of error are overruled.

**4.** Art. 30.02(a)(3) states that a person commits the offense of burglary when he enters a build-

ing or habitation and commits a felony or theft.

The judgment of the trial court is affirmed.