Death Opinion














IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






AP-73,431






CHARLES VICTOR THOMPSON, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL FROM


CAUSE NO. 782657 IN THE 262
ND JUDICIAL DISTRICT COURT


HARRIS COUNTY






 Johnson, J., delivered the opinion for a unanimous Court.


O P I N I O N




 Appellant was convicted of capital murder in April 1999. Tex. Penal Code Ann. § 19.03(a). 
Based on the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article
37.071, sections 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071 § 2(g). (1) Appeal
to this Court is required. Art. 37.071 § 2(h). We affirmed the conviction, but vacated the sentence and
remanded the cause to the trial court for a new hearing on punishment. Thompson v. State, 93 S.W.3d
16 (Tex. Crim. App. 2001). At the retrial on punishment, the jury answered the special issues as before,
and appellant was again sentenced to death. This appeal followed. After reviewing appellant's eight points
of error, we find them to be without merit and affirm the trial court's sentence of death.

 In his seventh point of error, appellant claims that the evidence is insufficient to support a finding
beyond a reasonable doubt that there is a probability that appellant will commit criminal acts of violence
that constitute a continuing threat to society. Appellant points to the testimony of defense expert Dr.
Daneen Milam, who testified that, despite appellant's narcissistic personality, he had previously
demonstrated that he would conform in a structured prison environment. Appellant contends that, in light
of Milam's testimony, no rational factfinder could have concluded beyond a reasonable doubt that there
is a probability that appellant will be a future danger.

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most
favorable to the verdict. See Jackson v. Virginia, 443 U.S. 307 (1979). Evidence presented at
appellant's punishment retrial showed that appellant and the victim, Glenda Dennise Hayslip, were
romantically involved for nearly a year, but appellant became increasingly possessive, jealous, and abusive. 
Hayslip met Darren Cain, and the two began dating. Around 3 a.m. on April 30, 1998, police responded
to a disturbance call at Hayslip's apartment and found appellant, Cain, and Hayslip arguing. No one
wanted to press charges, so police told appellant to leave the complex and warned him not to return. 
Appellant returned with a gun three hours later and shot both Hayslip and Cain. Cain had multiple gunshot
wounds to his neck and chest, and Hayslip was shot at close range in the face. Cain died at the scene, and
Hayslip died in the hospital a week later.

 A few hours after committing the murders, appellant went to the home of Diane Zernia and
confessed to her. After calling his father, appellant surrendered to authorities. Appellant later phoned
Zernia from jail and tried to persuade her to lie about what he had told her, but she refused. Appellant also
attempted, from prison, to solicit someone to kill Zernia and was later indicted for solicitation to commit
capital murder. The State also presented evidence that appellant was associated with the Aryan
Brotherhood gang in prison. A fellow jail inmate testified that appellant gave him a list of people who
appellant believed were potential witnesses and told the inmate that he would pay him to "eliminate" the
witnesses or otherwise make sure that they would not appear in court. The inmate turned the list over to
the police.

 The State also presented evidence that appellant began committing crimes as a juvenile. In 1984,
while living with his parents in an upper-middle-class neighborhood in Colorado, appellant committed a
string of crimes that resulted in over $60,000 of damage to homes and property. While on probation from
the youth center, appellant stole his father's motorcycle, ran away, and committed a variety of crimes. He
was arrested again in 1987 and sentenced to a juvenile facility. Appellant had problems with drugs and
alcohol from an early age. He married, but later abandoned his wife and two children. In 1996, appellant
was arrested for transporting illegal immigrants from Mexico.

 From this evidence, a rational jury could determine, beyond a reasonable doubt, that there is a
probability that appellant would commit criminal acts of violence in the future so as to constitute a continuing
threat, despite Milam's testimony that appellant would conform within a prison environment. Point of error
seven is overruled.

 In points of error one and two, appellant contends that his state and federal constitutional rights to
a trial by jury include the right, on remand, to have the same jury determine guilt as well as punishment. He
concedes that he is raising this issue for the first time on appeal, but contends that, because it is a systemic
requirement, he may do so. See Marin v. State, 851 S.W.2d 275 (Tex. Crim. App. 1993).

 "A 'systemic requirement'. . . is a law that a trial court has a duty to follow even if the parties wish
otherwise." Mendez v. State, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004). But there is no "law" that
compels a retrial on guilt as well as punishment after a reversal for punishment error. The only law of which
we are aware provides to the contrary. Art. 44.29(c); Ransom v. State, 920 S.W.2d 288, 297-98
(1994)(op. on reh'g); see also Clark v. State, 994 S.W.2d 166, 168 (Tex. Crim. App. 1999)(recognizing
that "the law require[s] us to remand the case for a hearing on punishment only" after reversing for
punishment error under 44.29(c)).

 Appellant argues that the constitutional right to a trial by jury also supports a right to have the same
jury decide guilt and punishment, but he does not set out the logical progression that leads to that
conclusion. He relies in part on Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona,
536 U.S. 584 (2002), although he again fails to demonstrate how those cases support his claim. 
Moreover, we have rejected a similar claim based on Apprendi. In Smith v. State, 74 S.W.3d 868, 872
(Tex. Crim. App. 2002), the defendant argued that the Court's reversal for only a new punishment hearing
violated the Sixth Amendment and due process. He asserted that, because the definition of capital murder
at that time included an element of deliberateness, the same jury should decide both guilt and the
deliberateness special issue. Id. at 873. Smith relied on Apprendi for the proposition that a sentencing
factor, such as deliberateness, was a fact finding that must be made by the same jury that determined guilt. 
We rejected that argument.

 [W]e see nothing in Apprendi that suggests that the same jury must consider the
guilt-innocence and punishment phases where the trial court submits an issue of
deliberateness, as the appellant argues. Apprendi requires only that "any fact that
increases the penalty for a crime beyond the prescribed statutory maximum must be
submitted to a jury, and proved beyond a reasonable doubt." As we pointed out above,
the Texas scheme follows Apprendi's constitutional rule. We may reverse and remand
any capital case for a punishment hearing alone before a new jury.


Id. at 874 (citations omitted). There are no state statutory provisions requiring that the same jury decide
the separate issues of guilt and punishment when the death penalty is sought, and we are aware of no
authority construing the federal or state constitutions as imposing such requirement. Considering the dearth
of any authority, constitutional or otherwise, that supports appellant's claim, we do not conclude that it is
a systemic requirement. Also, appellant has procedurally defaulted these claims by raising them for the first
time in this appeal. Points of error one and two are overruled.

 In point of error three, appellant claims that the trial court erred by proceeding to punishment on
the special issues when the indictment did not allege the issues or any facts in support of those issues, in
violation of his federal constitutional right to due process of law. Appellant contends that, under Apprendi,
he was entitled to have the grand jury pass on the special punishment issues before the State is authorized
to seek the death penalty.

 This Court has repeatedly rejected the argument that Apprendi requires the State to allege the
special issues in the indictment. See, e.g., Renteria v. State, 206 S.W.3d 689, 709 (Tex. Crim. App.
2006) (citing Russeau v. State, 171 S.W.3d 871, 886 (Tex. Crim. App. 2005), cert. denied, 126 S.Ct.
2982 (2006), and Rayford v. State, 125 S.W.3d 521, 533 (Tex. Crim. App. 2003)). Point of error three
is overruled.

 In point of error four, appellant asserts that the failure to allege the special punishment issues in the
indictment violated his state constitutional right to indictment by a grand jury. He contends that the grand
jury should be required to pass on the special issues before the State is authorized to seek the death
penalty. Appellant points to language from King v. State, 473 S.W.2d 43, 45 (Tex. Crim. App. 1971),
which quoted from Corpus Juris Secundum:

"At common law all offenses above the grade of misdemeanor must be prosecuted by
indictment, for it was the policy of the common law that no man should be put on his trial
for felony, for which the punishment was death, until the necessity therefor should first
be determined by a grand jury on oath."


(Emphasis added by appellant). Appellant's argument is based on the historic role of the grand jury to
operate as a check on prosecutorial power.

 There is nothing in the language of the state constitution itself that requires the grand jury to pass
on special punishment issues. Article I, section 10, pertaining to the rights of an accused in criminal cases,
provides in part that the accused "shall have the right to demand the nature and cause of the accusation
against him, and to have a copy thereof" and that "no person shall be held to answer for a criminal offense,
unless on an indictment of a grand jury[.]" Tex. Const. Art. I § 10; see also id. at Art. V § 12(b)(defining
indictment). Although indictments serve, in part, to "provide the accused an impartial body which can act
as a screen between the rights of the accused and the prosecuting power of the State," Teal v. State, 230
S.W.3d 172, 175 (Tex. Crim. App. 2007), this has never been interpreted to mean that the grand-jury
screening function set out in the Texas Constitution pertains to capital-sentencing issues.

 The language from King quoted by appellant does not support appellant's argument. The
defendant in King pled guilty to three non-capital felony offenses. King v. State, 473 S.W.2d at 44. In
one of the cases, he waived the right to be charged by indictment. On appeal, he claimed that the right
to an indictment could not be waived. In discussing the historical basis for indictments at English common
law, the Court quoted from Corpus Juris Secundum (C.J.S.), where it is noted that "no man should be put
on his trial for felony, for which the punishment was death, until the necessity therefor should first be
determined by a grand jury on oath." Id. at 45. But the reference to punishment by death, when read in
context, is not the focus of the discussion. The point of the discussion is that indictments have historically
served as protection against arbitrary accusations by the government in serious criminal cases. Id. 
Moreover, the C.J.S. quote was dicta under the facts in King. We have repeatedly recognized
prosecutorial discretion to seek the death penalty. See, e.g., Russeau, 171 S.W.3d at 887 (State's
discretion to seek death penalty is not unconstitutional, citing Hankins v. State, 132 S.W.3d 380, 387
(Tex. Crim. App. 2004), and Ladd v. State, 3 S.W.3d 547, 574 (Tex. Crim. App. 1999)). The C.J.S.
excerpt in King does not support any grant of authority under our state constitution that would compel a
check on that discretion by the grand jury.

 Finally, in Studer v. State, 799 S.W.2d 263, 272 (Tex. Crim. App. 1990), this Court concluded
that, per constitutional amendments adopted in 1985, the "requisites of an indictment stem from statutory
law alone now." Articles 21.02 and 21.03 set forth the requisites for an indictment, and the Court has held
that these provisions do not require the State to plead the punishment special issues in a capital case. 
Rosales v. State, 748 S.W.2d 451, 458 (Tex. Crim. App. 1987); Sharp v. State, 707 S.W.2d 611, 624
(Tex. Crim. App. 1986). Point of error four is overruled.

 In his fifth point of error, appellant claims that the trial court erred in overruling his motion for
mistrial in response to the state's closing argument at punishment. Appellant complains of a statement made
by the prosecutor during closing argument: "And, by the way, do you want to feed him and clothe him and
pay his cable bills for the next three plus decades?" (Emphasis added.) The court sustained appellant's
objection and instructed the jury to disregard. Appellant's motion for a mistrial was denied. Appellant
claims that the State's argument referring to the public paying for his access to cable television was too
prejudicial and inflammatory for the court's instruction to cure.

 Even when a prosecutor mentions facts outside the record during argument, an instruction to
disregard will generally cure the error. See Martinez v. State, 17 S.W.3d 677, 691 (Tex. Crim. App.
2000); Guidry v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999)(holding prosecutor's statement
during argument that co-defendant was "on death row," a fact not in evidence, was cured by prompt
instruction to disregard). Assuming, without deciding, that the prosecutor's reference to cable television
was outside the bounds of proper argument, the argument was not so extreme as to render ineffective an
instruction to disregard. The State made a single and brief reference to cable television, the trial court
sustained the objection, its instruction to disregard the comment was immediate, and the State did not
repeat the reference. The trial court did not abuse its discretion in denying appellant's motion for a mistrial. 
Point of error five is overruled.

 In point of error six, appellant claims that the trial court erred in allowing testimony about the
number and types of people who attended Hayslip's funeral. He contends that this testimony exceeded
the scope of proper victim-impact evidence by encouraging a moral comparison between appellant and
the victim. See Payne v. Tennessee, 501 U.S. 808, 823 (1991)(victim impact should not be offered to
encourage comparative judgments); Mosley v. State, 983 S.W.2d 249, 262 (Tex. Crim. App.
1998)(when focus shifts from humanizing the victim and illustrating harm caused by defendant to measuring
worth of victim compared to others, then state exceeds bounds of permissible testimony).

 Hayslip's brother, Michael Gene Donaghy, testified about her funeral.

 Q. How many people showed up [at the funeral]?


 A. Hundreds. There was a lot of people.


 Q. Did you even realize she had that many friends or that many people who knew her?


 A. I knew my sister touched a lot of lives and everybody loved her and she loved
everybody. I didn't know she knew that many people.


 Q. Who showed up at the funeral? Social friends? Clients? Mixture of both?


 [DEFENSE COUNSEL]: I object to this. This goes beyond victim impact with
this testimony.


 THE COURT: That's overruled.


 [DEFENSE COUNSEL]: Gets to the area of victim character evidence and we
object to it.


 THE COURT: Overruled. Go ahead.

 Appellant failed to object to the State's question about the number of people who attended the
funeral, and any complaint as to that question was therefore procedurally defaulted. Although appellant
argues that the trial court erred in allowing Donaghy "to testify to the . . . types of people who attended the
. . . funeral," no testimony was actually elicited. The question was asked, and the trial court overruled
appellant's objection, but the prosecutor never pursued an answer. Even assuming that the question was
improper, appellant was not harmed by the unanswered question. The question by itself did not assume,
suggest, or interject any facts about who actually attended the service or leave the jury with a particular
impression about the types of persons who attended. See Brown v. State, 692 S.W.2d 497, 501 (Tex.
Crim. App. 1985)(noting that mere asking of improper question is not reversible error unless it results in
obvious harm to accused); cf. Turner v. State, 719 S.W.2d 190, 194 (Tex. Crim. App. 1986)(when
witness does not have opportunity to respond to improper question, instruction to disregard will render
error harmless). Point of error six is overruled.

 In his eighth point of error, appellant claims that the method of execution by lethal injection is cruel
and unusual punishment, in violation of his federal constitutional rights. Appellant does not allege or explain
in what way the method of execution by lethal injection is cruel and unusual, and he did not raise the issue
at trial. We have previously concluded that we cannot address this type of claim when the record, as here,
is not sufficiently developed at trial. Bible v. State, 162 S.W.3d 234, 250 (Tex. Crim. App. 2005). 
Moreover, the claim is not ripe for review on direct appeal. See Colburn v. State, 966 S.W.2d 511, 513
(Tex. Crim. App. 1998)(because defendant's execution was not imminent, his claim that death sentence
was unconstitutional due to his mental illness was not ripe for review). Point of error eight is overruled.

 The judgment of the trial court is affirmed.



Do not publish

Delivered: October 31, 2007
1. Unless otherwise indicated, all references to Articles refer to the Texas Code of Criminal Procedure.