United States Court of Appeals,

Fifth Circuit.

No. 91–7381.

In the Matter of Wesley R. ENGLAND, Debtor.

Wesley R. ENGLAND, Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Abrams Centre National Bank, and J. Gregg Pritchard, Chapter 7 Trustee in Bankruptcy, etc., Appellees.

Oct. 26, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, JOHNSON and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

This case calls on the Court to determine whether both a homestead and proceeds from the sale of a former homestead are exempt under section 41.001 of the Texas Property Code. Wesley R. England appeals, urging the Court to reverse the Northern District Court's holding that both are not exempt. Concluding that the language in section 41.001 clearly and unambiguously forbids the simultaneous exemption of both, we affirm.

I. Facts and Procedural History

For the twenty-seven years prior to October 16, 1990, Wesley R. England ("England" or "Appellant") and his wife, Virginia, lived in a home in Cedar Hill, Texas, which constituted their urban homestead.[1] On October 16, 1990, England sold this property for $10,000 in cash and a

_____

[1]Appellant presently argues that the Cedar Hill home, which included 6.248 acres of land, may have been a rural homestead, not an urban homestead. However, his counsel was quite clear before the bankruptcy court, conceding that "the urban homestead, admittedly urban, was in excess of an acre.... [s]o only one acre of that would be exempt, obviously ..." (Rec.Vol. 3 at 11–12). England's counsel also stated that he did not believe that there was "any dispute that the ... Cedar Hill property was served by all [municipal] utilities." (Rec.Vol. 3 at 30). Further, the Appellant himself testified that his former homestead was located within the city limits of Cedar Hill. (Rec.Vol. 3 at 31). Based upon these statements, there can be no question but that the Cedar Hill property constituted urban, not rural, homestead.

$210,000 Note Receivable (Note). This Note required the buyers to pay Appellant $1843 per month for thirty-five months, with the balance due on October 16, 1993. England used the proceeds which he received to pay for improvements on his ranch[2] and for living expenses.

Approximately two weeks after closing on the house, England and his wife moved onto their 869 acre ranch near Hico, Texas. Two days after this move, on November 1, 1990, England filed a petition for relief under Chapter 11 of the Bankruptcy Code. This was later converted to a Chapter 7 proceeding. Based upon 11 U.S.C. § 522(b)(2)(A), England elected to exempt property based upon Texas law. Among other things, he claimed his ranch as a rural homestead[3] and the Note as proceeds from the sale of homestead, both purportedly exempt property under section 41.001(a) and (c) of the Texas Property Code. The Federal Deposit Insurance Company and Abrams Centre National Bank ("creditors"[4] ) timely objected, arguing that to allow both exemptions would be tantamount to allowing the appellant two homestead exemptions. The bankruptcy court and, upon England's appeal, the district court agreed 141 B.R. 495. Both courts disallowed the exemption of the proceeds, holding that as presented by England, the proceeds constituted a second homestead,[5] something not countenanced by Texas law. England appealed to this Court, urging that we reverse the holdings of the courts below and hold that both are exempt.

## II. Discussion

[2]Mr. England testified that he used the funds to improve the ranch in several ways, including remodeling his house, building two barns, building roads on the ranch, drilling a water well, digging water tanks, and fencing the entire 869 acre ranch. He stated that the only improvement which was not fully completed was the completion of a third barn.

[3]England claimed the entire 869 acres as his rural homestead. However, the law is indisputably clear that a rural homestead consists of a maximum of two hundred acres. *See* TEX.PROP.CODE ANN. § 41.002 (Vernon Supp.1992).

[4]J. Gregg Pritchard is the Chapter 7 Trustee of the bankruptcy estate of the Appellant. He intervened in this appeal solely to monitor the appeal and to participate as required to protect the rights and interests of the creditors of the estate.

[5]In the interest of clarity, this Court chooses not to characterize the proceeds as homestead. *See infra* note 7.

A. Jurisdiction

Each court must be satisfied that it has jurisdiction of each case it considers. Even if the parties fail to raise the question of subject matter or appellate jurisdiction, the court must do so *sua sponte,* if necessary. *In re Moody,* 849 F.2d 902 (5th Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988). The bankruptcy judge's order disallowing exemption of the proceeds clearly did not dispose of England's entire bankruptcy case. We must therefore determine whether this Court has appellate jurisdiction over that order.

Jurisdiction over bankruptcy cases arises from 28 U.S.C. § 158(d), which grants courts of appeals appellate jurisdiction over "all final decisions, judgments, orders, and decrees" of bankruptcy judges. District courts also have appellate jurisdiction over bankruptcy cases; however, their jurisdiction includes interlocutory orders and decrees on which the court has granted leave to appeal. 28 U.S.C. § 158(a). Although the district court did not grant England leave to appeal this case, that court did not discuss the finality of the bankruptcy court's order.

The Supreme Court has defined final judgment, as used in 28 U.S.C. § 1291, as a decision which "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire and Rubber Co. v. Risjord,* 449 U.S. 368, 373–74, 101 S.Ct. 669, 672–73, 66 L.Ed.2d 571 (1981) (quoting *Coopers and Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2456, 57 L.Ed.2d 351 (1978)). The Supreme Court has not defined final judgment with respect to section 158.

However, a determination that appellate jurisdiction arises only when the bankruptcy judge enters an order which ends the entire bankruptcy case, leaving nothing for the court to do but execute the judgment, would substantially frustrate the bankruptcy system. This is so particularly when, as here, one independent decision materially affects the rest of the bankruptcy proceedings. Separate and discrete orders in many bankruptcy proceedings determine the extent of the bankruptcy estate

and influence creditors to expend or not to expend effort to recover monies due them. The reversal of such an order would waste exorbitant amounts of time, money, and labor and would likely require parties to start the entire bankruptcy process anew. This potential waste of judicial and other resources has influenced this Court and other courts of appeals to view finality in bankruptcy proceedings in a more practical and less technical light. *See In re Moody,* 849 F.2d 902, 904 (5th Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988); *In re Brayshaw,* 912 F.2d 1255, 1256 (10th Cir.1990); *In re Apex Oil Co.,* 884 F.2d 343, 347 (8th Cir.1989); *In re Cottrell,* 876 F.2d 540, 541 (6th Cir.1989); *F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 103–04 (3d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); *In re Charter Co.,* 778 F.2d 617, 621 (11th Cir.1985); *Sumy v. Schlossberg,* 777 F.2d 921, 923 (4th Cir.1985). *But see In re Wisz,* 778 F.2d 762, 763–64 (11th Cir.1985). The Court has determined that an order which ends a discrete judicial unit in the larger case concludes a bankruptcy proceeding and is a final judgment for the purposes of section 158(d). *In re Moody,* 849 F.2d 902, 904 (5th Cir.1988); *In re Moody,* 817 F.2d 365, 368 (5th Cir.1987). Finality in bankruptcy cases is contingent upon the conclusion of an adversarial proceeding within the bankruptcy case, rather than the conclusion of the entire litigation. *In re Louisiana World Exposition, Inc.,* 832 F.2d 1391 (5th Cir.1987).

Other courts have explicitly held that the grant or denial of an exemption in a bankruptcy proceeding is a final order under section 158(d). *In re Brayshaw,* 912 F.2d 1255, 1256 (10th Cir.1990); *Sumy,* 777 F.2d at 923; *In re Jones,* 768 F.2d 923, 925–26 n. 3 (7th Cir.1985); *In re White,* 727 F.2d 884, 886 (9th Cir.1984); *John T. Mather Memorial Hospital, Inc. v. Pearl,* 723 F.2d 193, 194 n. 1 (2d Cir.1983).[6] Although this Court has reviewed a district court's determination that certain property was exempt in a bankruptcy proceeding, it has not expressly held that such an order is final. There was an implicit finding that the bankruptcy court's order was final. *In re Dyke,* 943 F.2d 1435 (5th Cir.1991). That which *In re Dyke* implied, the Court now holds: An order which

---

[6]Although *In re White* and *Mather Memorial Hospital* were decided prior to the enactment of § 158, we find the analysis in those cases persuasive.

grants or denies an exemption will be deemed a final order for the purposes of 28 U.S.C. § 158(d).

B. *Homestead and Proceeds Exemption*

1. *Standard of Review*

The determination of whether both homestead and proceeds of former homestead are exempt is a question of law, which this Court reviews *de novo.* *Frame v. S–H, Inc.,* 967 F.2d 194, 202 (5th Cir.1992).

2. *Proceeds of Former Homestead*

From the beginning of Texas' statehood in 1845, its constitutions have provided homestead protection to its residents. *See* TEX. CONST. of 1845, art. VII, § 22. The first constitution, as well as those which followed it, protected homestead from forced sale for the payment of debts, except in specific circumstances which are not relevant in this case. In 1897, the legislature passed article 2396, a predecessor to section 41.001, which also protected proceeds from the sale of a homestead[7] from creditors ("proceeds exemption statute"). The Texas Legislature amended the proceeds exemption statute in 1985.[8] That statute, section 41.001 of the Texas Property Code, presently reads:

> (a) A homestead and one or more lots used for a place of burial of the dead are exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property.
>
> (b) Encumbrances may be properly fixed on homestead property for:
>
> > (1) purchase money;
> >
> > (2) taxes on the property; or

---

[7]Homestead interests exist in real property. *Cocke v. Conquest,* 120 Tex. 43, 52, 35 S.W.2d 673, 678 (1931). *See also* TEX.PROP.CODE ANN. § 41.002 (Vernon Supp.1992) (urban homestead consists of one acre of land; rural homestead consists of not more than two hundred acres). Proceeds are personal property, and cannot be homestead. We therefore disapprove of the district court's determination and the creditors' argument that the exemption of proceeds and homestead is tantamount to the exemption of two homesteads.

[8]The legislature has re-enacted or amended the statute several times since its initial enactment in 1897.

(3) work and material used in constructing improvements on the property if contracted for in writing before the material is furnished or the labor is performed and in a manner required for the conveyance of a homestead, with joinder of both spouses if the homestead claimant is married.

(c) The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale.

TEX.PROP.CODE ANN. § 41.001 (Vernon Supp.1992).

The creditors argue that sections (a), (b), and (c) of the statute are disjunctive, allowing the exemption of homestead *or* proceeds, but not both. England argues that the sections are *conjunctive* such that the statute clearly and unambiguously exempts homestead in section (a) *and* proceeds in section (c). He asseverates that construing the statute to exempt both the homestead and the proceeds is consistent with the legislature's intent that courts liberally construe homestead laws, "even if the results are personally distasteful." No Texas court has answered this question, so this Court ventures out into uncharted territory in determining whether section 41.001 may be construed to exempt both a homestead and proceeds of a former homestead simultaneously.

a. *Interpretation of Section 41.001*

The first step in interpreting the meaning of a statute is to review its language. Courts must adhere to the plain language of the law unless doing so demonstrably conflicts with the intentions of the drafters. *In re Meyerland Co.,* 960 F.2d 512, 516 (5th Cir.1992) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

The language in section 41.001(c) is clear regarding proceeds of homestead: When one sells his homestead, the proceeds from that sale are exempt. However, when one acquires a new homestead after the sale of his previous homestead, he abandons the previous homestead, changing its character to *former* homestead.[9] *Weaver v. Nugent,* 72 Tex. 272, 277, 10 S.W. 458, 460 (1888).

_____

[9]While the sale of homestead is abandonment which technically renders the property former homestead, it is clear that the legislature intended that that type of abandonment trigger the protection afforded in § 41.001. *See Ingram v. Summers,* 29 S.W.2d 447 (Tex.Civ.App.—El

Therefore, the pertinent question this Court must answer is whether the proceeds of the sale of *former* homestead are exempt under section 41.001. We find that they are not.

Just as the former homestead loses its homestead character when its owner abandons it, so the proceeds of the sale of that former homestead lose their homestead character and become proceeds of *former* homestead. Texas law has consistently distinguished *homestead* from *former homestead* and has done so for well over a century. Texas does not and has never afforded owners of *former* homestead the rights of homestead claimants. *Marler v. Handy,* 88 Tex. 421, 427–28, 31 S.W. 636, 639 (1895); *Weaver,* 72 Tex. at 277, 10 S.W. at 460; *Reece v. Renfro,* 68 Tex. 192, 194, 4 S.W. 545, 546–47 (1887); *Allison v. Shilling,* 27 Tex. 450, 455–56 (1864). Owners of abandoned homestead have no rights in their former homest ead, and there are no hindrances to the seizure thereof. *Allison,* 27 Tex. at 455–56.

Because the distinction between homestead and former homestead is so clear, we believe the drafters of the exempt ion statute would have unambiguously mandated that proceeds of both be exempt, if that indeed is what they intended.[10] *See Herman Iken and Co. v. Olenick,* 42 Tex. 195,

---

Paso 1930). This Court's use of the terms "abandonment" and "former homestead" does not encompass homestead abandoned merely by sale. As used in this opinion, the terms mean abandonment by the acquisition of another homestead. *See infra* slip op. p. 607 (discussion of *Ingram v. Summers* ).

[10]During oral arguments, counsel for Mr. England asserted that the legislature may have intended that both homestead and the proceeds be simultaneously exempt so that the claimant could have a source of income. However, the Supreme Court addressed such an issue in 1875. The court determined that

> [t]o exempt property, not in fact a part of the homestead, because it will be a source of income from which a support for the family may be drawn ... may be also an income much beyond that of even a majority of the most affluent class of our city population. A construction of the constitutional exemption ... which would lead to such results, or afford the means of such fraudulent practices against honest creditors cannot be sanctioned, unless imperatively demanded by the plain and unmistakable language in which it is expressed.

*Herman Iken and Co. v. Olenick,* 42 Tex. 195, 200 (1875). In 1897, the legislature answered by enacting a plain, unmistakable statute which exempted the proceeds of the sale of homestead, not former homestead. To follow the Texas Supreme Court's decision,

200 (1875).  However, they did not do so, and we find that the plain language of section 41.001(c) clearly and unambiguously exempts only the proceeds of the sale of homestead.  Only during the six months following the sale of a homestead when a claimant has not acquired another homestead do claimants have any protected rights in homestead sale proceeds.  *See Ingram v. Summers,* 29 S.W.2d 447 (Tex.Civ.App.—El Paso 1930).  The sale of the homestead instantly activates the protection of the proceeds exemption statute and shelters the proceeds for up to six months.  However, the acquisition of another homestead during that six month period instantly changes the prior homestead to *former* homestead and deactivates the proceeds exemption statute such that the proceeds of the former homestead are no longer exempt.  Here, England's Hico ranch designation automatically terminated his right to exempt the proceeds and triggered his right to exempt the new homestead.

## b. *Texas Case Law and Legislative History*

The Court's construction of section 41.001 is entirely consistent with the legislative intent and Texas case law.  In enacting the present version of the proceeds exemption statute and other homestead laws, the Texas legislature asserted that their intent was to codify case law on homestead. SENATE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex.S.B. 1232, 69th Leg., R.S. (1985);  Debate on Tex.S.B. 1232 on the Floor of the House of Representatives, 69th Leg., R.S. (May 17, 1985) (tape available from the Office of the House Committee Coordinator).

Texas cases have consistently held that the fundamental purpose of the Texas homestead laws is to secure a place of residence against financial disaster.  *Cocke v. Conquest,* 120 Tex. 43, 53, 35 S.W.2d 673, 678 (1931);  *Herman Iken and Co.,* 42 Tex. at 198 ("The leading and fundamental idea connected with a homestead is unquestionably associated with that of a place of residence for the family, where the independence and security of a home may be enjoyed, without danger of its loss, or harassment and disturbance by reason of the improvidence or misfortune of the head or any other

a court cannot sanction a construction of § 41.001 which exempts proceeds of former homestead absent clear and unambiguous language which so requires.

member of the family. It is a secure asylum of which the family cannot be deprived by creditors."); *Allison v. Shilling,* 27 Tex. 450, 455 (1864). *See also Woodward v. Sanger Bros.,* 246 F. 777, 780 (5th Cir.1917), *cert. denied,* 246 U.S. 674, 38 S.Ct. 425, 62 L.Ed. 932 (1918) (This Court asserted that "[a] fundamental ideal involved [in the homestead laws] is a place of residence."). The homestead laws not only have beneficent purposes, but they also are designed to support the public policy of preventing homelessness among Texas residents. *Cocke,* 120 Tex. at 52, 35 S.W.2d at 678; *Woods v. Alvarado State Bank,* 118 Tex. 586, 595, 19 S.W.2d 35, 38 (1929).

However, prior to the 1897 proceeds exemption statute, those who voluntarily sold their homestead with the intention of investing the sale proceeds in another homestead were faced with the possibility of losing all of the proceeds to creditors. For when exempt property was voluntarily sold or exchanged, the proceeds were not exempt. *Kirby v. Giddings,* 75 Tex. 679, 13 S.W. 27 (1890). This rule was harsh and inconsistent with the purposes of the homestead laws, and many people were rendered homeless because of it. *See Kirby v. Giddings,* 75 Tex. 679, 13 S.W. 27 (1890); *Mann v. Kelsey,* 71 Tex. 609, 12 S.W. 43 (1888); *Whittenberg v. Lloyd,* 49 Tex. 633 (1878).

The Texas legislature responded, recognizing that there would be times when people would need to sell their homestead. It therefore passed the proceeds exemption statute "to preserve the homestead protection afforded by the Texas Constitution in such cases by exempting sale proceeds from creditors' claims for six months." *Taylor v. Mosty Bros. Nursery, Inc.,* 777 S.W.2d 568, 570 (Tex.App.—San Antonio 1989). The object of the proceeds exemption statute was *solely* to allow the claimant to invest the proceeds in another homestead, not to protect the proceeds, in and of themselves.[11] *Gaddy v. First National Bank,* 283 S.W. 277, 280 (Tex.Civ.App.–Beaumont 1926).

---

[11]England urges the Court to find that "investment in homestead" equates to improvement of homestead. However, a review of Texas cases which used the terms invest or reinvest in homestead reveals that the courts used those terms to mean "purchase" or "acquire." *See e.g. Kirby v. Giddings,* 75 Tex. 679, 13 S.W. 27 (1890); *Blum v. Light,* 81 Tex. 414, 16 S.W. 1090 (1891); *Freiberg, Klein and Co. v. Walzem,* 85 Tex. 264, 20 S.W. 60 (1892); *Cameron v. Gebhard,* 85 Tex. 610, 22 S.W. 1033 (1893); *Stallings v. Hullum,* 89 Tex. 431, 35 S.W. 2 (1896).

*See also Taylor,* 777 S.W.2d at 570 ("The six-month provision was enacted in order that the proceeds might be reinvested in another homestead").

The court in *Ingram v. Summers* delineated the extent of the proceeds exemption. 29 S.W.2d 447 (Tex.Civ.App.—El Paso 1930). In dicta, the court stated that certain actions of a claimant could waive the right to exempt homestead proceeds. The court stated that if the claimant abandoned the homestead, the exemption statute would not apply and the proceeds would be subject to garnishment. *Id.* at 449. While the court held that abandonment of the homestead by sale did not waive the proceeds exemption, it intimated that abandonment *in any other* manner is incompatible with and not covered by the exemption statute. *Id.* at 449–50. Indubitably, abandonment by the acquisition of another homestead is one way a claimant forfeits his or her rights to exempt sale proceeds of the former homestead.

In light of the plain language of section 41.001, the legislative intent, and Texas case law, this Court holds that when one abandons a homestead by acquiring another homestead, the proceeds of the former homestead are not covered by section 41.001 and are therefore not exempt.

### III. Conclusion

Had Mr. England not claimed his ranch as homestead, the proceeds from the Cedar Hill property would be exempt under section 41.001(c) of the Texas Property Code. However, both cannot be exempt at the same time. Although homestead laws were designed to secure to residents homes which creditors cannot seize, the legislature did not intend that the laws be extended to jeopardize the rights of others. *Herman Iken and Co. v. Olenick,* 42 Tex. 195, 201 (1875); *Allison v. Shilling,* 27 Tex. 450, 455 (1864). The judgment of the court below is therefore AFFIRMED.