Rex NEWMAN, Appellant,

v.

The STATE of Texas.

No. 1438–94.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 6, 1996.

Richard E. Langlois, San Antonio, for appellant.

Carrie L. Moy Majors, Asst. Dist. Atty., Jourdanton, Mathew Paul, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

Appellant was charged by indictment with aggravated sexual assault, alleged to have occurred on or about the 22nd day of May 1992. On April 8, 1993, appellant was convicted in a trial by jury in the 81st Judicial District Court of Frio County of that offense; whereafter the jury assessed punishment at 50 years confinement and a $10,000 fine. On April 21, 1993, the trial court heard testimony on appellant's Motion for Appointment of Counsel to Perfect an Appeal and request for a free record, but reserved ruling to allow appellant to provide his bankruptcy records

and to file a motion for new trial if desired. Subsequently on May 27, 1993, after hearing more testimony and argument of counsel, the trial court overruled appellant's motion for appointment of counsel and request for free record, and made a finding that appellant was not indigent. The trial court then discharged trial counsel, thus leaving appellant without counsel.

In appealing that decision, appellant's sole point of error claimed, "The trial court erred when appellant was denied a free copy of the statement of facts for appeal." The Fourth Court of Appeals affirmed, concluding that appellant failed to make a prima facie showing of indigency and that the trial court did not abuse its discretion in determining he was not indigent. *Newman v. State*, No. 04-93-00506-CR (Tex.App.—San Antonio, delivered September 7, 1994). The court of appeals specifically stated that after sifting through the testimony and bankruptcy records, it was left to conclude that while appellant claimed he did not have the cash to pay for a statement of facts, the record showed that there was equity in both his residence and business, and items of personal property that could be sold. *Id.*, slip op. at 5. We granted appellant's petition for discretionary review raising two grounds.

## I.

### GROUNDS FOR REVIEW

Appellant's two grounds for review are as follows:

*Ground For Review No. 1:*

The Fourth Court of Appeals erred in holding that an appellant must sell or mortgage property exempted under Texas Homestead Laws to pay for an attorney and record when a determination is made that he is not indigent.

*Ground For Review No. 2:*

The Fourth Court of Appeals erred by holding the trial court did not abuse its discretion when it determined that appellant was not an indigent and denied appellant a free record on appeal.

## II.

### GROUND NUMBER ONE

Ground for Review Number One presumes that the court of appeals held that an appellant *must* sell or mortgage exempt property to pay for an attorney and record when he has been determined to not be indigent. However, our review of the court of appeals' opinion reveals no such holding.

The court of appeals simply considered the bankruptcy petition's listing of various items of personal property claimed as exempt, and that the total value of the claimed exemptions, excluding the residence, business, vehicles, and salaries, was $8,500. *Newman v. State*, slip op. at 4. It also noted that, other than the car and the truck, there was no testimony regarding attempts to sell any of the personal property items or whether the value of such was greater than any amount owed thereon, and that there was no testimony concerning appellant's wife's living expenses. *Id.*, slip op. at 4–5. There was also no determination by the court of appeals that the personal property claimed as exempt in the petition was actually exempt under Texas homestead laws. *Id.*

We see no holding by the court of appeals that an indigent defendant must sell exempt property to pay for an appellate attorney and record. Accordingly, Ground Number One is overruled.

## III.

### GROUND NUMBER TWO

■ Ground for Review Number Two challenges the court of appeals' conclusion that the trial court did not abuse its discretion in determining that appellant was not indigent. It is undisputed that pursuant to the provisions of Tex.R.App.Pro. 53(j)(2) an indigent defendant, i.e. one unable to pay for or give security for the statement of facts, is entitled to have the statement of facts furnished without charge. The only disputed issue is indigency.

■ A part of appellant's argument is that the trial court's finding of nonindigency, and the court of appeals' affirmance thereof, is forcing him to sell exempt property under

the Texas Homestead laws of Tex. Const., art. XVI, § 50 and the statutory provisions of V.T.C.A. Prop.Code, § 41.001 et seq. Without going into the intricacies of Texas property law, we do not discern any forced sale of homestead property in the trial court's ruling. The trial court simply found that appellant was not indigent, but it did not order him to sell anything; homestead, exempt personal property, or non-exempt personal property.

Since an appellate review of criminal convictions is provided in Texas, the trial court has a duty to provide an indigent defendant with an adequate record on appeal. *Abdnor v. State,* 712 S.W.2d 136, 139 (Tex.Cr. App.1986). A determination of whether a defendant is entitled to a free transcription of the court reporter's notes is to be made on a case-by-case basis. *Id.,* at 141. Once a prima facie showing of indigency is made, the defendant has shown his entitlement to the record unless evidence is offered which refutes his claim. *Snoke v. State,* 780 S.W.2d 210, 213 (Tex.Cr.App.1989). The determination of indigency is a matter resting in the sound discretion of the trial court and is reviewable only for abuse of discretion, i.e. absent such abuse the trial court's ruling will not be disturbed on appeal. *Rosales v. State,* 748 S.W.2d 451, 455 (Tex.Cr.App.1987), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2917, 101 L.Ed.2d 949 (1988). After testimony from two hearings and presentation of bankruptcy records, the trial court found that "[appellant] is not indigent[.]"

At the April 21 hearing, appellant and his wife testified. His wife testified about having borrowed money from a bank and from her daughter to pay trial counsel. She also testified that they had filed for bankruptcy, but that she was still operating their glass business with help from her son. She said that they were keeping the business going where there was enough money to survive on, just bare necessities, and even owed for last year's property taxes, had to let one of the trucks go back to the finance company, and dropped workman's compensation insurance. They also still owed money on what was borrowed to pay trial counsel. She stated that it had taken two or three months to even raise the money to pay trial counsel.

Appellant then testified about being presently in jail. He indicated that he could not raise the money for the record or to hire an attorney to go further with the case, and that he believed the court reporter had estimated that the record would cost $5,000.

At the May 27 hearing, only appellant's wife testified. The trial court also marked as a court's exhibit and included in the record bankruptcy papers received from appellant's bankruptcy attorney. Appellant's wife testified about some of the things in the bankruptcy papers. When asked if its showing of a value of $35,000 for their house was an accurate evaluation, she said, "I suppose it is. I don't really know." When asked what she thought she could get for it if she went to sell it, she said, "Well, right now I probably couldn't. It's kind of—had a few things wrong with it." She indicated that it would take "maybe Three or Four Thousand Dollars, just things that need to be done" to get it in shape. When asked what was owed on it, she responded, "Thirteen Thousand, I guess, Twelve something. I don't know." When questioned about the value of their office building, which was valued at $72,000, she was likewise somewhat indefinite as to its value. When asked if it would be worth the $62,000 that they had put down, she said, "I would think it would, I don't know." She also testified about having let somebody take over the payments on a 1991 pickup, but still had a '91 Chevrolet pickup, owing almost $8,900, with it having a value of $9,000.

When asked if she would have to pay a realtor if she tried to sell their house, Appellant's wife testified, "I would guess I would pay the realtor, yes, a fee[,]," and that there was "no telling how long it would take. It would take a long time to sell it." She added, "And that would give me maybe Ten or Twelve or Fifteen Thousand, which wouldn't last me very long." She also indicated that she "d[id]n't imagine" that she could get any more money on their building than what was already owed. When asked about liquid assets, she said, "I don't know of any we have." When asked how long it would take to raise the funds necessary for

the court reporter's $5,000, i.e. to sell enough of their belongings to pay for it, she said, "I think it would take a few months." When asked if such would be longer than the 90 days to perfect appeal, she replied, "I would imagine." When asked if there was any way that she could raise the funds necessary to try to appeal this case, she said, "I don't know, because, as you know, I had a hard time. It took me a long time to borrow the money from two different sources to hire you." When asked if, in all honesty, appellant was indigent, she said,

He certainly has no cash, and the only thing is like you just said, if you're selling your home and the business, and then maybe if you have nothing whatsoever, at all, to your name, maybe, you know, and then it wouldn't be enough, but it would take months to do that.

She added that she had checked with a named attorney about handling the appeal, and that he had quoted a fee of $30,000 and upwards, and that there was "just no way to come up with that kind of money."

As noted above, the trial court marked as a court's exhibit and included in the record bankruptcy papers received from appellant's bankruptcy attorney. Our review of these records reveals a Chapter 7 bankruptcy petition filed by appellant and his wife in the U.S. Bankruptcy Court—Western District of Texas on February 16, 1993. Also included was a statement of financial affairs, and schedules detailing various properties and creditors' claims, current income, and current expenditures.

We observe that the schedules list many items of personal property, e.g. appliances, furniture, clothing, jewelry, camera, shotgun, two color television sets; with these particular items valued at over $3,000. Listed under other liquidated debts owing debtor is $11,625 from a general contractor and $1,273 from a constructors corp. Listed under annuities is $1,700 from a life insurance company policy. Also listed are four pickup trucks and a Chevrolet Corsica. This personal property also appears on another schedule as property claimed exempt.

Rule 53(j)(2) provides that a defendant be furnished with a statement of facts if after a hearing the trial court finds that the defendant is unable to pay or give security for it. As noted above, the determination of indigency must be made on a case-by-case basis, and the trial court's decision thereon is reviewable only for abuse of discretion, i.e. absent such abuse its ruling will not be disturbed on appeal.

After reviewing the testimony from appellant and his wife, and the bankruptcy records, we cannot conclude that the court of appeals was incorrect in its determination that the trial court did not abuse its discretion in concluding that appellant was not indigent. As discussed above, the testimony reveals that there was some contemplation and ability to liquidate various assets, although the time for being able to do such was not definite. Appellant filed a timely motion for new trial, thus pursuant to Tex. R.App.Pro. 41(b)(1) notice of appeal was due within 90 days after sentence was imposed; thus calculating 90 days after April 8, 1993, notice of appeal would have been due by July 7, 1993. The record reflects that appellant did file his notice of appeal on July 1, 1993. Tex.R.App.Pro. 54(b) provides that the transcript and statement of facts be filed within 120 days after the day sentence was imposed; thus calculating 120 days after April 8, 1993, such would have been due by August 6, 1993. Tex.R.App.Pro. 54(c) even provides for an extension of time for late filing. The record reflects that the transcript was filed on September 10, 1993. It also reflects that the court of appeals granted appellant's Motion for Extension of Time to File Statement of Facts and extended the time to November 4, 1993. The only statement of facts volume filed, which transcribed the two above-discussed indigency hearings, was filed October 25, 1993.

We also point out that the issue of claimed property exemptions was obviously to be litigated and determined in the bankruptcy court. Whether such property was exempt and its disposition as to creditors was certainly to be adjudicated through the bankruptcy proceedings.

We cannot conclude that the court of appeals was incorrect in its determination that

the trial court did not abuse its discretion in concluding that appellant was not indigent. *See, e.g., Rosales v. State,* 748 S.W.2d at 456–58.[1] Accordingly, we overrule Ground Number Two.

In overruling both of appellant's ground for review, the judgment of the court of appeals is hereby affirmed.

CLINTON, J., concurs in the result.

BAIRD, Judge, dissenting.

Believing exempt property, in the form of a homestead, should not be considered in indigency determinations, I respectfully dissent.

## I.

Appellant was self-employed in the glass business. After being charged with aggravated sexual assault, he retained counsel. As a result of his incarceration, appellant's financial circumstances deteriorated, and, during trial appellant and his wife filed a joint petition for bankruptcy. Appellant was subsequently convicted and sentenced to fifty years imprisonment.

Appellant requested the appointment of appellate counsel and a free statement of facts. At the hearing on this request, appellant's wife testified she had contacted an attorney who quoted a fee of $30,000 to represent appellant on appeal, plus any expenses. The court reporter estimated the cost of the statement of facts to be $5,000. Both appellant and his wife testified they were without funds to pay these expenses. Additionally, appellant provided a copy of his bankruptcy petition which listed the couple's total assets and liabilities as $156,174.00 and $143,466.00, respectively.[1] Based upon these figures, the trial judge determined appellant was not indigent under Tex.R.App. P. 53(j)(2) and Tex.Code Crim. Proc. Ann. art. 26.04(b), and denied appellant's requests for a free statement of facts and appointment of counsel.

On appeal, appellant contended the trial judge erred in considering exempt property to hold appellant was not indigent.[2] Indeed, when appellant's homestead is not considered, appellant has a negative net worth of $10,015.00.[3] The Court of Appeals affirmed, holding there was equity in appellant's residence, business and items of personal property which could be sold to pay for a statement of facts.[4] *Newman v. State,* No. 04–93–00506–CR (Tex.App.—San Antonio, delivered September 7, 1994) (not published).

## II.

An indigent defendant, facing the possibility of imprisonment, is entitled to the appointment of counsel. *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). *See,* Tex.Code Crim. Proc. Ann. arts. 1.051 and 26.04. Moreover, where an appeal is provided by statute, the United States and Texas Constitutions require that indigent defendants be appointed counsel on appeal. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18

1. We do note that although in *Rosales, supra,* this Court agreed with the trial court that the defendant was not indigent and approved of the denial of the requested free appellate record, we subsequently granted Rosales a new appeal based upon a writ of habeas corpus application alleging ineffective assistance of counsel for failing to obtain a transcript for appeal following the trial court's adverse ruling on his indigent status. *Ex parte Rosales,* No. 70,847, 769 S.W.2d 248 (Tex. Cr.App. delivered May 10, 1989); and *see Rosales v. State,* 841 S.W.2d 368, 371 (Tex.Cr.App.1992), *cert. denied,* 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).

1. This included a real property valued at $97,-000.00 and personal property valued at $59,-174.00. Subtracting total liabilities from total assets results in a $12,708.00 equity which, on its face, seems to indicate appellant had sufficient funds to pay for the statement of facts.

2. In refusing to find appellant indigent, the trial judge stated: "[W]hat I have in front of me is the bankruptcy records which indicate there is sufficient exempt property, and that [appellant] is not indigent...."

3. Schedule A of the bankruptcy petition establishes that appellant's homestead has a current market value of $35,000.00, subject to a mortgage balance of $12,277.00.

4. At the time of his direct appeal, appellate counsel had been retained. Therefore, appellant's sole point of error concerned the denial of a free statement of facts.

L.Ed.2d 493 (1967); *Currie v. State,* 516 S.W.2d 684 (Tex.Cr.App.1974); *and, Hogan v. State,* 572 S.W.2d 526 (Tex.Cr.App.1978). Obviously, there can be no effective appeal, and no effective appellate representation, without a transcript and statement of facts. *Stephens v. State,* 509 S.W.2d 363, 365 (Tex.Cr.App.1974).

Tex.R.App. P. 53(j)(2) provides a procedure whereby indigent defendants can obtain a free statement of facts to perfect their appeal.[5] *Rosales v. State,* 748 S.W.2d 451, 454 (Tex.Cr.App.1987). *See also, Griffin v. Illinois,* 351 U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956) (Upon a showing of indigency the trial judge must provide an indigent defendant with an adequate record for appeal.); *Williams v. State,* 530 S.W.2d 582 (Tex.Cr.App.1975); *and, Gray v. State,* 928 S.W.2d 561 (Tex.Cr.App.1996). The purpose of the rule is to provide equal appellate access to indigent defendants whose indigency would otherwise prevent them from obtaining such access. *Rosales,* 748 S.W.2d at 454. And, unless the State produces evidence to the contrary, a defendant is entitled to a free statement of facts upon a prima facie showing of indigency. *Snoke v. State,* 780 S.W.2d 210, 213–214 (Tex.Cr.App.1989); *Castillo v. State,* 595 S.W.2d 552, 554 (Tex.Cr.App.1980). Indigency is determined on a case-by-case basis resting within the discretion of the trial judge. *Rosales,* 748 S.W.2d at 455; *and, Abdnor v. State,* 712 S.W.2d 136 (Tex.Cr.App.1986). Because appellate review of an indigency determination is conducted under an abuse of discretion standard, this Court has been reluctant to set rigid standards for such a determination. *Rosales,* 748 S.W.2d at 455. However, two principles are clear. First, the trial judge must look at the defendant's financial status at the time of appeal, *not* at the time of trial. *Barber v. State,* 542 S.W.2d 412, 413 (Tex.Cr.App.1976). Second, the trial judge shall consider only the defendant's personal financial condition, not that of his parents, other relatives, friends or employers. *Rosales,* 748 S.W.2d at 455.[6]

Indigency is defined as "not financially able to afford counsel." Tex.Code Crim. Proc. Ann. art. 1.051(b). The method for determining indigency is found at Tex.Code Crim. Proc. Ann. art. 26.04(b) which provides:

> In determining whether a defendant is indigent, the court shall consider such factors as the defendant's income, source of income, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, spousal income, and whether the defendant has posted or is capable of posting bail.

This article should be considered when making an indigency determination under Rule 53(j)(2). *Ex parte Bain,* 568 S.W.2d 356, 361 (Tex.Cr.App.1978); *and, Redman v. State,* 860 S.W.2d 491, 493 (Tex.App.—El Paso 1993). However, neither rule 53(j)(2) nor art. 26.04 distinguishes between exempt and non-exempt property. Accordingly, we granted review to consider whether exempt property, in the form of a homestead, may be considered in indigency determinations.[7]

**5.** Rule 53(j)(2) provides in pertinent part:
Within the time prescribed for perfecting the appeal an appellant unable to pay for the statement of facts may, by motion and affidavit, move the trial court to have the statement of facts furnished without charge. After hearing the motion, if the trial court finds the appellant is unable to pay or give security for the statement of facts, the court shall order the reporter to furnish the statement of facts. . . .

**6.** There are two exceptions to this latter principle. First, the financial position of spouses may be considered, especially in cases where the spouse is willing and able to help the defendant reach and convert assets. *Rosales,* 748 S.W.2d at 457. Second, outside sources such as relatives and employers may be considered if they are legally bound to pay for the defendant's appellate expenses. *Abdnor,* 712 S.W.2d at 142 (quoting *Staten v. State,* 662 S.W.2d 672, 674 (Tex.App.—Houston [14th Dist.] 1983, no pet.)).

**7.** We granted review on two grounds:
1. The Fourth Court of Appeals erred in holding that an appellant must sell or mortgage property exempted under Texas Homestead laws to pay for an attorney and record when a determination is made that he is not indigent.
2. The Fourth Court of Appeals erred by holding the trial court did not abuse its discretion when it determined that appellant was not indigent and denied appellant a free record on appeal.

## III.

The Legislature has provided that certain property is protected from forced sale by creditors. *See,* Tex. Prop.Code Ann. §§ 41.001–42.005. One's homestead falls within this category of exempt property.[8] Although this is a case of first impression, there are at least four reported cases dealing with homesteads in indigency determinations.

In *Stephens v. State,* 509 S.W.2d 363 (Tex. Cr.App.1974), the defendant challenged the trial judge's denial of a free statement of facts. The record indicated the defendant owned a non-working Ford station wagon, a homestead, and a horse. We reversed, holding, "it is clear that [the defendant] in this case established a prima facie case of his status as indigent at the date of his hearing." *Id.,* at 364–365. We did not consider the homestead in reaching this holding.

In *Rosales,* 748 S.W.2d 451, the defendant was convicted of capital murder and requested a free statement of facts. The trial judge denied the request. In reviewing that decision we considered the defendant's assets. He owned a homestead, had recently sold his business for $35,000 (at an initial payment of $10,000 and $500 paid monthly for five years), owned the land the business was located on, owned an apartment complex worth $45,000 (mortgaged for $25,000–$30,000), owned a residential lot worth $3,000, a trailer house valued between $13,000 and $30,000 and four cars. The defendant testified he had no money to pay for the statement of facts, unless he was forced to sell all or part of his property. *Id.,* 748 S.W.2d at 456–457. Although it is not clear from the opinion, the Court apparently excluded the homestead from its review of the indigency determination, noting the record was sufficient to uphold the trial judge's determination that ap-

pellant had sufficient assets to obtain the $9,000–$10,000 needed to pay for the statement of facts. *Id.,* at 457.

In *Harper v. State,* 850 S.W.2d 736 (Tex. App.—Amarillo 1993), the trial judge held the defendant was not indigent because he held equity in his homestead. The Court of Appeals reversed, and expressly refused to consider the equity in the defendant's homestead because of its exempt status.[9] *Id.,* at 739.

At least one federal court has chosen to not consider homesteads in indigency determinations. In *U.S. v. Trevino,* 679 F.Supp. 636 (S.D.Tex.1987), the defendant owned a spacious home in an exclusive community, a motor boat and four motor vehicles. The Court "doubt[ed] that the law would require these Defendants to actually sell their homestead to perfect an appeal." *Ibid.* The Court then found the defendants were entitled to a free appellate transcript. *Ibid.*

Furthermore, in several bankruptcy cases the Fifth Circuit has dealt with the exempt status of Texas homesteads. In *Matter of England,* 975 F.2d 1168, 1174 (5th Cir.1992), the court explained the proceeds exemption statute recognized the right to sell one's homestead and reinvest the proceeds in another homestead within a period of six months. Prior to the enactment of this statute, the proceeds could be seized by creditors immediately after sale, directly contravening the spirit of the homestead exemption:

> Texas cases have consistently held that the fundamental purpose of the Texas homestead laws is to secure a place of residence against financial disaster. *Cocke v. Conquest,* 120 Tex. 43, 53, 35 S.W.2d 673, 678 (1931); *Herman Iken and Co.,* 42 Tex. at 198 ("The leading and fundamental

---

**8.** Tex. Prop.Code Ann. § 41.001 provides in part:

(a) A homestead and one or more lots used for a place of burial of the dead are exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property.

(b) Encumbrances may be properly fixed on homestead property for:
(1) purchase money;
(2) taxes on the property;
(3) work and material used in constructing improvements on the property . . .;

(4) an owelty of partition . . . or
(5) the refinance of a lien against a homestead, including a federal tax lien . . .

(c) The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of the sale.

**9.** *See,* Tex. Prop Code Ann. § 41.001, note 5, *supra.*

idea connected with a homestead is unquestionably associated with that of a place of residence for the family, where the independence and security of a home may be enjoyed, without danger of its loss, or harassment and disturbance by reason of the improvidence or misfortune of the head or any other member of the family. It is a secure asylum of which the family cannot be deprived by creditors.") ... The homestead laws not only have beneficent purposes, but they also are designed to support the public policy of preventing homelessness of Texas residents.

In *Matter of Bradley*, 960 F.2d 502, 507 (5th Cir.1992), the Fifth Circuit stated:

... Because homesteads are favorites of the law, we must give a liberal construction to the constitutional and statutory provisions that protect homestead exemptions ... Indeed, we must uphold and enforce the Texas homestead laws even though in so doing we might unwittingly "assist a dishonest debtor in wrongfully defeating his creditor."

(Internal citations omitted.)

Though these latter two cases involve bankruptcy proceedings and the equitable disposition of properties to creditors, they are persuasive authority for holding homesteads should not be included in indigency determinations.

### IV.

Because homesteads are exempt from forced sale, and because case precedent supports the principle that homesteads should be given special treatment in indigency determinations, I would hold that homesteads may not be considered in indigency determinations under either rule 53(j)(2) or art. 26.04(b). Accordingly, I would reverse the judgment of the Court of Appeals and re-

mand this case to the trial court for further proceedings consistent with this opinion.[10] Because the majority fails to do so, I respectfully dissent.

---

10. As the Court of Appeals noted, schedule C of appellant's bankruptcy petition lists several items of exempt personal property. I believe exempt personal property may be considered in indigency determinations under rule 53(j)(2) and art. 26.04(b). However, as mentioned in footnote 4, *supra*, appellant has retained appellate counsel. I can only assume the exempt personal property was used to secure the services of appellate counsel.

Finally, on remand I would ask the trial judge to consider whether non-exempt property under the jurisdiction of a federal bankruptcy court may be considered in indigency determinations. Appellant and his wife petitioned for a Chapter 7 bankruptcy. The record indicates a Chapter 7 bankruptcy results in a complete liquidation of the non-exempt property.