MOTION GRANTED; Opinion Filed January 14, 2013



In The

# Court of Appeals
## Fifth District of Texas at Dallas

_____

No. 05-12-00224-CR

_____

**JORGE SUAREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the County Criminal Court No. 11
Dallas County, Texas
Trial Court Cause No. MA10-72305-N

## OPINION

Before Chief Justice Wright and Justices Bridges, and Myers
Opinion by Chief Justice Wright

Before the Court is appellant's motion to review the trial court's determination of non-indigency, to find him indigent for purposes of appeal, to supplement the appellate record, and to permit supplementation of his brief. We conclude the trial court abused its discretion in determining appellant was no longer indigent and thus we grant the motion.

### BACKGROUND

Appellant was charged with the offense of assault involving family violence. The Dallas County Public Defender's Office was appointed to represent him. Before trial, appellant posted

-1-

a cash bond in the amount of $1,500 to secure pretrial release. After appellant allegedly threatened the complainant in the hall outside the courtroom, the State filed a motion to hold the bond insufficient. The trial court held a hearing and increased appellant's bond to $5,000. Appellant paid cash for both bonds.

Before trial, appellant's appointed counsel filed a motion for continuance representing appellant was "prepared and wishes to hire an attorney of his choice...." During the pretrial hearing on the day of trial, appellant's counsel argued for a continuance citing appellant's desire to retain counsel and a need for a record of the bond hearing proceedings as grounds. Counsel represented appellant "has the funds available today to hire counsel of his choice if he was allowed a continuance in this matter." The trial court expressed concern over appellant using appointed counsel when he had the ability to retain his own attorney but denied the continuance as untimely. At appellant's trial, held on December 16, 2011, a jury convicted appellant of the offense. The trial court assessed punishment at 180 days confinement in the county jail and a fine of $500, probated for twenty-four months. Appellant filed a pauper's oath as part of his notice of appeal swearing he was a "penniless, destitute and indigent person, too poor to employ counsel" and unable to give security for the reporter's record. The trial court then reappointed the public defender to represent appellant on appeal.

While the appeal was pending, appellant and another man approached the trial court and asked how the man could get the $5,000 put up for appellant's bond. According to the trial court, the man stated he was appellant's employee. According to appellant, the man worked as a maintenance man in an apartment moving company owned by appellant's son where appellant was also employed.

The trial court decided to conduct a review of appellant's indigency. At a hearing held

- 2 -

on April 4, 2012, the trial court reviewed two affidavits of indigency[1] appellant had filed and heard appellant's testimony. Although the trial court and appellant discussed what the "maintenance man" had said to the trial court, the maintenance man was not called to testify. The State did not put on evidence and asked appellant only to affirm that he lived alone.

Appellant testified he earned approximately $1,000 per month as an employee of his son's apartment moving business. He described his expenses as $300 for rent, $60 for gasoline when he borrows a car, $300 for food, $200 for his telephone, and $280 per month for his leg monitor. Appellant also testified he had given his thirteen-year-old daughter $40 per week "for a couple of weeks." When the trial court questioned him about discrepancies between his financial affidavits and his testimony, appellant admitted he had made a mistake in calculating his cell phone expense and it was $50 per month rather than $200. Appellant also indicated his affidavit needed updating because it included $45 for insurance on a car he had sold a month ago.

Appellant testified he balances his budget by getting a weekly loan from a friend and money from his mother. Appellant explained his son sold a truck to raise the $5,000 for his bond.[2] Appellant denied the account of the "maintenance man" being the source of the bond money. Appellant testified his son had put up the money for the bond and the maintenance man had brought it because his son was in New York.

Under questioning from the trial court, appellant admitted he had been trying to get the bond money back to the maintenance man. Appellant explained why he was trying to get the money returned to the maintenance man as follows: "But you know what happen—I tell you he

---

[1] Although the trial court took judicial notice of the affidavits, they are not part of the record on appeal.

[2] Although the trial court's questions assumed the original bond was $3,500 and the increased bond amount was $1,500, the State's motion to hold the bond insufficient and the trial court's order granting the motion show the original bond was $1,500 and the trial court increased the bond by $3,500.

- 3 -

got the money back because last time I had to pay him more than the $1500 he give me. Like he give $200, $500, that's why I want to give him that money belong him now." Appellant affirmed to the trial court that both he and the maintenance man agreed the bond money belonged to the maintenance man. Appellant further agreed with the trial court that during the hearing when appellant's bond was set at $3,500, appellant had pulled the money from his pocket to pay the bond, the maintenance man was not present at that time, and appellant had not been aware before the hearing that he would be taken into custody if he did not pay a bond. Appellant explained he had the money because he had sold a truck for his son one or two days before for $3,500 and he had been carrying around the cash. Appellant admitted that when his bond was increased, he had pulled the $1,500 in cash from his pocket but he claimed his son had given him the money.

Appellant's counsel relayed to the trial court that she had sought estimates from four appellate lawyers for taking appellant's case and she received two quotes of $7,500 and $8,000 to represent appellant on appeal. The trial court suggested appellant could acquire the services of counsel for less money for the appeal of a two-day misdemeanor trial.

In announcing its ruling, the trial court stated it believed appellant had additional sources of income. When counsel objected to the ruling, the trial court responded:

> I know you believe his testimony. I don't. I mean I understand that's your client and you believe his testimony. I don't believe that testimony.
> There have been two prior people, not only the other person [the maintenance man] that said he worked for him, there was a hearing before you were involved where somebody sworn under oath and took the stand and said she worked for him, not with him. She worked for him and it was his company. That was her sworn testimony in a hearing in this court.
> So I'm not only considering just what you're telling me, I'm also considering all the evidence from this case that helps me determine whether or not he's indigent. That's what she said.

- 4 -

The other gentleman [the maintenance man] came in, wasn't a sworn hearing. He just approached to ask how he could get the bond money back and said he worked for him.

So there's been inconsistent testimony in comparison to what he testified to today. I know you believe his testimony. I don't believe his testimony is credible.

The trial court concluded appellant was not indigent and this appeal followed.

## STANDARD OF REVIEW AND APPLICABLE LAW

A defendant may be indigent if the defendant is "not financially able to employ counsel" or is unable to "pay or give security for the appellate record." *See* TEX. CODE CRIM. PROC. ANN. art. 1.051(b) (West Supp. 2012); Tex. R. App. P. 20.2; *McFatridge v. State*, 309 S.W.3d 1, 5 (Tex. Crim. App. 2010). Whether a defendant is indigent for appointment of counsel and obtaining a free record are separate issues and may be resolved differently but involve consideration of the same factors. *See McFatridge*, 309 S.W.3d at 5–6. Indigence determinations are made at the time the issue arises and on a case-by-case basis. *Id.* at 5. Factors relevant to consider are the defendant's income, sources of income, assets, property, outstanding obligations, necessary expenses, number and age of dependents, and spousal income available to the defendant. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(m) (West Supp. 2012); *McFatridge*, 309 S.W.3d at 6. Whether a defendant has posted or is capable of posting bail is not a consideration except to the extent it reflects the defendant's financial circumstances as measured by the other factors. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(m); *Whitehead v. State*, 130 S.W.3d 866, 875 (Tex. Crim. App. 2004).

In making its indigence determination, the trial court should employ a two-step process. First, the defendant must make a *prima facie* showing of indigence. *McFatridge*, 309 S.W.3d at 6. If the defendant makes a *prima facie* showing of indigence, the burden then shifts to the State

- 5 -

to show the defendant is not indigent. *Id.* Unless there is some basis in the record to find the defendant's *prima facie* showing of indigence is inaccurate or untrue, the trial court should accept it as sufficient and find the defendant indigent. *Id.* Once the defendant has been determined indigent, he is presumed to remain indigent for the duration of the case unless there is a material change in his financial circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p).

The trial court's indigence determinations are reviewed on appeal for an abuse of discretion. *See Newman v. State*, 937 S.W.2d 1, 3 (Tex. Crim. App. 1996). If a defendant establishes a *prima facie* showing of indigence, an appellate court will uphold a determination that the defendant is not indigent only if the record contains evidence supporting the determination. *McFatridge*, 309 S.W.3d at 6. The trial court is not completely free to disbelieve the defendant's assertions concerning his financial status; but it may disbelieve the defendant's assertions "if there is a reasonable, articulable basis for doing so, either because there is conflicting evidence or because the evidence submitted is in some manner suspect or determined by the court to be inadequate." *Whitehead*, 130 S.W.3d at 876.

## DISCUSSION

Appellant contends the trial court erred in conducting the indigency hearing because it lacked jurisdiction, no evidence showed a change in his financial circumstances to overcome the presumption of indigence, and the trial court used improper standards to determine he was not indigent. Turning first to the matter of the trial court's jurisdiction, appellant contends the trial court lacked jurisdiction to re-examine his status four months after appellant filed his notice of appeal when nothing in the record reflects this Court vested the trial court with any fresh

- 6 -

authority to review his indigency status. The State responds the trial court still had subject matter jurisdiction over the case because the appellate record had not yet been filed.

The court of criminal appeals has held that the filing of a notice of appeal divests the trial court of general jurisdiction over a case. *See Ramirez v.* State, 104 S.W.3d 549, 550 (Tex. Crim. App. 2003). The rules of appellate procedure, however, provide that except as provided by law or the appellate rules of procedure, once the appellate record has been filed, all further proceedings in the trial court are suspended until the appellate court issues its mandate. *See* Tex. R. App. P. 25.2(g). Even in *Ramirez*, the court opined the trial court retained jurisdiction after the notice of appeal was filed in order to decide whether to appoint counsel. *See Ramirez*, 104 S.W.3d at 550. In this case, the clerk's record has been filed but the reporter's record has not yet been filed. The code of criminal procedure permits reconsideration of the issue of a defendant's indigency if there is a material change in financial circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p). Because the record was not yet filed and the law permits reconsideration of indigency, we conclude the trial court had jurisdiction to conduct its inquiry. *See* Tex. R. App. P. 25.2(g); *State v. Moore*, 225 S.W.3d 556, 568 (Tex. Crim. App. 2007) (holding the trial court's subject matter jurisdiction extends until the appellate record is filed); *see also Whitehead*, 130 S.W.3d at 874 n. 34 (noting but declining to resolve the potential conflict between the court of criminal appeal's opinions and rule 25.2(g) over "the exact moment the trial court loses jurisdiction.").

Appellant next contends there was no evidence showing a material change in his financial circumstances that would justify re-examination of his indigency status. Appellant contends the trial court had found him to be a pauper at the time he filed his appeal and the State did not object to his pauper's oath. Accordingly, appellant contends, there is a legal presumption of

- 7 -

continued indigence. No motion was filed to challenge that status, and no evidence was presented that would call into doubt the presumption of indigence.

The State contends there is some basis in the record to support the trial court's ruling because (1) appellant initially testified his telephone expense was $200 but revised that under questioning to $50 per month; (2) appellant offered a shifting story regarding whether his son or the maintenance man paid his bail; (3) appellant admitted having $3,500 cash in his pocket to pay his bail even though he had not known he was being taken into custody; (4) appellant produced an additional $1,500 in cash from his pocket when his bail was increased; and (5) appellant's counsel sought a continuance by representing to the trial court that appellant had sufficient funds to retain trial counsel. Appellant concedes his effort to obtain a continuance to retain trial counsel could have triggered questions regarding his indigency but he notes that the trial court did not find him not to be indigent and no evidence was presented showing the amount of funds available, the source of the funds, or whether the funds were still available in April 2012 to retain appellate counsel. We agree with appellant.

After the trial court accepted appellant's bail money, and heard trial counsel's representation that appellant had funds available to retain trial counsel, it nevertheless found appellant indigent and appointed the public defender to represent him on appeal. Thus, the record reflects the trial court determined appellant to be indigent and appellant is presumed indigent barring a material change in his financial circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p).

Nothing in the evidence before the trial court indicated a change in appellant's financial circumstances. Appellant testified his expenses exceed his income and he is forced to borrow money to make up the difference. The State did not file a motion to re-examine whether

- 8 -

appellant was indigent; it presented no evidence at the hearing to refute appellant's presumed indigency; and it asked appellant only one question to confirm that he lived alone. Thus, the trial court's determination that appellant was not indigent rests entirely upon whether the trial court's colloquy with appellant created "a reasonable, articulable basis" for the trial court to conclude appellant's evidence of indigence was suspect or inadequate. *Whitehead*, 130 S.W.3d at 876.

While a discrepancy was detected in the amount of appellant's telephone bill, the discrepancy in the telephone expense is immaterial in light of evidence showing appellant's necessary expenses would not permit him to retain counsel or pay for an appellate record. Although appellant's production of substantial amounts of cash twice in connection with the bond hearings and his explanations of how he came to have the cash in his pocket might raise suspicion, no evidence was presented to support an alternate view of how appellant acquired the cash, or having spent the money on his bond, whether appellant could raise additional sums from the same source. Without evidence bearing on the source of the bond money or another factor set out in article 26.04(m), the fact that appellant posted bail is not a proper consideration. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(m); *Whitehead*, 130 S.W.3d at 875.

Likewise, no evidence was presented to address whether the funds appellant's trial counsel represented were available on December 15, 2011 to retain trial counsel were still available to hire appellate counsel on April 4, 2012. Appellant's indigency is determined on the date the issue arises, and not at some prior or future date. *See Whitehead*, 130 S.W.3d at 874.

Because appellant established a *prima facie* showing of indigency and was entitled to a presumption of continued indigence, we may uphold the trial court's determination that appellant is no longer indigent only if the record contains evidence supporting the determination. *McFatridge*, 309 S.W.3d at 6. In this case, the record does not contain such evidence. The State

- 9 -

did not present any evidence to support the trial court's suspicion that appellant might have another source of income. Therefore, we conclude the trial court did not have a reasonable, articulable basis to conclude appellant's evidence of indigence was suspect or inadequate. *Whitehead*, 130 S.W.3d at 876.

Accordingly, we grant appellant's motion and reverse the trial court's ruling that appellant is not indigent.

_____
CAROLYN WRIGHT
CHIEF JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120224F.U05

- 10 -