In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00096-CR

                                                ______________________________

 

 

                                          MACEO WAITES,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 115th
Judicial District Court

                                                            Marion County, Texas

                                                         Trial Court
No. F10734-A

 

                                                      
                                            

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Even
though an appeal was perfected, an opinion was rendered, and judgment became
final in 1993 in this case, the Texas Court of Criminal Appeals has authorized
another appeal of this conviction.  Based
on the superior court’s order, we will review the issues raised.  Although not precisely enumerated as such,
Waites presents four points of error.  He
claims the trial court should have granted Waites’ motion to suppress a written
statement made by Waites; that the trial court erred in overruling Waites’
objections to the prosecutor’s closing arguments at guilt/innocence and later
at punishment; and that an incomplete reporter’s record entitles him to a new
trial.  After reviewing Waites’ points of
error, we affirm his conviction.

I.          FACTS

            On
September 17, 1991, Ann Brooks walked into her garage and was attacked by a man
wielding a large knife or machete. 
Brooks testified she had known Waites since he was a small child and
identified him as her attacker.  Waites
hit Brooks several times on the top of her head with the knife or machete and
took a shoulder bag she was carrying.  In
the bag was a large amount of cash and checks, jewelry, and a .380 pistol.  Earlier that day, before the robbery, witness
Joe Luster said he saw Waites, whom Luster knew and identified, walking down a
road in the area of the Brooks home carrying a machete.     

            Also
on the day of the robbery, Royce Martin was working on a truck in an area near
the Brooks home; with him was Melvin Rand. 
Martin saw Waites run out of the woods; in one hand, Waites had “a
pretty good sized gun,” in the other, a wad of cash.  Waites pulled Rand aside, and although Martin
could not hear their conversation, he testified he saw Waites hand Rand the
cash.  Later, Rand asked Martin to count
the money; Martin testified he counted $3,000.00.  Rand would later turn some of the cash in to
authorities; but between him, Martin, and another man, a good deal of the money
was spent.  

            Waites
became a suspect when Brooks identified him as the robber; Waites turned
himself in to authorities in Dallas about six days after the robbery.  While being interviewed by law enforcement,
he agreed to accompany them to an area in the woods behind the Brooks home;
bank bags with cash and checks were found, as were items of jewelry.  At trial, Brooks identified the jewelry as
items that had been in the bag taken from her in the robbery.  The rings found and later identified by
Brooks were found on the bank of a small pond. 
The day after they were found, authorities had the pond drained.  In the drained pond, they found a large knife
and a machete.  The machete was later
identified by Waites’ mother as belonging to her.  

            In
Waites’ case-in-chief, his mother, Carolyn Jackson, testified that the night
before the robbery, she had been driving around with Rand, who took her down a
road in the woods and pointed out the road that went to the Brooks house.  According to Jackson, Rand said that Brooks “has
got a lot of money” and “before the end of the week I’ll [Rand] bet you I have
me a lot of money.”  Jackson said she did
not think anything of this comment. 
Later that evening, after returning home, she saw Rand and Waites
conversing; Rand was sharpening a machete and she heard him say “this would
work.”  She identified State’s Exhibit 6,
the machete identified by Brooks as the one with which she had been attacked;
Jackson said she owned that machete as well as another.  She said State’s Exhibit 6 was the machete
Rand was sharpening the night before the robbery; and that night Waites was
holding the other machete.  Jackson
testified Rand had threatened to kill her and her children if she testified at
Waites’ trial.  

II.        PROCEDURAL HISTORY

            Waites’
trial[1]
was held in March 1992; the jury found him guilty on March 18, 1992.  He was represented at trial by retained
counsel, Walter Knowles.  Knowles filed a
notice of appeal for Waites, but never arranged for a reporter’s record[2]
or appellate brief to be filed.  This
Court contacted Knowles and advised him of the requirements that a statement of
facts and brief be timely presented to the Court.  At this Court’s direction, the trial court
held a hearing in December 1992 to address why Knowles had not secured a
reporter’s record or filed a brief; that hearing is detailed later in this
opinion.  On March 9, 1993, we issued an
unpublished opinion, noting that despite our attempts to contact counsel, no
statement of facts or brief had been filed by the appellant.  Waites v. State, cause
number 06-92-00090-CR.  Citing the Texas
Rules of Appellate Procedure in place at that time, we proceeded to review the
record before us, which was limited to the transcript.  Finding no error, we affirmed Waites’
conviction and sentence.  Our mandate
issued April 28, 1993.

            In
December 2008, Waites filed an application for habeas corpus relief, which led
to the Texas Court of Criminal Appeals finding that Waites was entitled to an
out-of-time appeal.  Following Waites’
motions and requests, we allowed him to proceed pro se on this out-of-time
appeal.         

III.       MOTION TO SUPPRESS

            Waites
first complains of the trial court’s denial of Waites’ motion to suppress a
lengthy written statement given by Waites to law enforcement shortly after
Waites turned himself in, about a week after the robbery.  Waites claims the statement was not made
voluntarily, and therefore the trial court erred in admitting it.  However, the statement was not offered into
evidence at trial and was not admitted.[3]  Where evidence obtained as a result of an
interrogation has not been used, the appellate court need not entertain a
complaint attacking admissibility of that evidence.  Baker
v. State, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997).  We overrule Waites’ first point of
error.   

IV.       PROSECUTOR’S
ARGUMENT 

            Waites raises two points of error
complaining of statements made by the prosecutor in closing arguments, one in
rebuttal of Waites’ closing argument at guilt/innocence, and another in the prosecutor’s
closing argument at punishment.

            A.        Guilt/Innocence Rebuttal Closing

            Waites complains of the following
statements made by the prosecutor in his rebuttal to Waites’ closing argument
at the guilt/innocence phase of trial:

The first thing, I don’t get angry very
often.  But I’m angry in this case.  I’m angry that somebody would come here into
this county, and not knowing the law enforcement officers that we have, and not
knowing Walter Thomas, and not knowing Howard Dunham, and not knowing some of
the other type of people that we have in this community here, the type of
people that they are, and get up here and tell you that these two men, along
with any others, would deliberately lie and deliberately set up a scheme –

 

At this point, Waites’ counsel
objected to “improper argument,” which objection was overruled.[4]  

            To
preserve an issue for appeal, a timely objection must be made that states the
specific ground for the objection, if the specific ground is not apparent from
the context.  See Tex. R. App. P.
33.1; Buchanan v. State, 207 S.W.3d
772, 775 (Tex. Crim. App. 2006).  A
general or imprecise objection may be sufficient to preserve error for appeal,
but only if the legal basis for the objection is obvious to the court and to
opposing counsel.  Buchanan, 207 S.W.3d at 775. 
Ordinarily, an objection to “improper argument” is too general to
preserve error.  Miles v. State, No. 01-09-00201-CR; 2010 Tex. App. LEXIS 110, at
*3 (Tex. App.—Houston [1st Dist.] Jan. 7, 2010, pet. filed) (citing Hougham v. State, 659 S.W.2d 410, 414
(Tex. Crim. App. 1983) (holding appellant’s objection “[w]e will object to this
line of argument” too general to apprise trial court of ground for his
objection regarding complaint about prosecutor’s jury argument)).  

            Notwithstanding
Waites’ failure to make a specific objection, we note that the State’s argument
was a permissible response to Waites’ closing argument.  Permissible jury argument falls into one of
four areas:  (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) an answer to the
argument of opposing counsel; or (4) a plea for law enforcement.  Cannady
v. State, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000).  Argument that strikes at a defendant over the
shoulders of defense counsel is improper. 
Wilson v. State, 7 S.W.3d 136,
147 (Tex. Crim. App. 1999); Dinkins v.
State, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995).

            The
State’s argument was in rebuttal to Waites’ closing argument.  In his closing summation, Waites’ attorney
argued to the jury that two of the State’s witnesses, Rand and Martin, were
utterly unbelievable.  He also suggested
that law enforcement agents had already found the stolen items in the woods and
took Waites to those items, rather than Waites having led officers to the
stolen booty and the weapons found in the pond. 
We contrast this situation with that in Brown v. State, 270 S.W.3d 564, 570–72 (Tex. Crim. App. 2008),
where the defense argued State’s witnesses presented false testimony and then
insinuated such testimony was at the behest of the prosecutor.  In his closing rebuttal, the Brown prosecutor in turn accused defense
counsel of lying.  The Texas Court of
Criminal Appeals found that the prosecutor strayed from the permissible areas
of referring to facts in the record or addressing statements of counsel;
rather, he “gave his own opinion directly impugning the veracity of opposing
counsel instead of disproving her allegations with testimony from the trial or
simply pointing out that [defense counsel’s] insinuations were nothing more
than her own unsupported speculation and conjecture.”  Id.
at 572.

            In
the instant case, though, the prosecutor said it made him “angry” that local
law enforcement was being accused of lying and manipulating evidence, or “set[ting]
up a scheme.”  It is true the prosecutor
referred to Waites’ attorney, who according to the record was from Dallas.  Waites interprets the prosecutor’s statement
that “somebody would come here into this county, and not knowing the law
enforcement officers that we have” as striking at Waites over his counsel’s
shoulders.  A prosecutor risks improperly
“striking at a defendant over the shoulder of counsel when the argument is made
in terms of defense counsel personally and when the argument explicitly impugns
defense counsel’s character.”  Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1998).  The State’s
comment in this case did not impermissibly strike at Waites over the shoulder
of counsel; the prosecutor was clearly responding to the defense’s closing
argument.  We overrule this point of
error.  

            B.        Prosecutor Comment in Closing Argument,
Punishment

            Waites also complains of the
following comment made by the prosecutor during closing argument at the
punishment stage:  

Living in this community, you have a right to
expect better conduct from your friends and neighbors than Maceo Waites -- . 

 

Waites’ counsel objected to “the
community’s expectations,” and the trial court overruled the objection.  

            Waites
claims that argument which refers to the expectations or demands of the
community for a particular result is error and correctly cites Wilson v. State, 581 S.W.2d 661, 666
(Tex. Crim. App. [Panel Op.] 1979), to that end.  However, in Wilson, the Texas Court of Criminal Appeals held that the State’s
argument[5]
did not “set forth what result the community demands or expects in this case.”  Id.  The State may make a proper plea for law
enforcement, including arguing the relationship between the jury’s verdict and
the deterrence of crime in general, arguing that juries should deter specific
crimes by their verdicts, and arguing the impact of the jury’s verdict on the
community.  Borjan v. State, 787 S.W.2d 53, 55–56 (Tex. Crim. App. 1990).  However, the State is not permitted to argue
that the community or any particular group in the community demands or expects
a verdict of guilt or a specific punishment. 
Id. at 56.  This type of improper argument urges the jury
to lend its ear to the community, rather than to be the voice of the
community—which constitutes a proper plea for law enforcement.  Cortez
v. State, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984).  However, not every reference to victims or
the community constitutes an improper appeal to community expectations.  The State may argue as a plea for law
enforcement the impact of a jury’s verdict on the community or on a particular
segment of the community.  See Borjan,
787 S.W.2d at 55–56.

            Here,
the State’s argument was a permissible plea for law enforcement.  Immediately before the complained-of
argument, the State had discussed the rights of the victim and her husband and
evidence admitted of Waites’ earlier conviction for aggravated assault.  The prosecutor asked the jury “[t]o think
about some other people’s” rights; he said it was time to “let the punishment
fit the crime.”  In the context of the
State’s argument, the statement of which Waites complains was a proper plea for
law enforcement.  We overrule Waites’
third point of error.  

V.        MISSING SECTION OF
REPORTER’S RECORD

            Waites
raises a fourth point of error (although not explicitly noted as his fourth
point of error, we treat Waites’ complaint as such) complaining that because
part of the court reporter’s record is missing, he is entitled to a new
trial.  Before addressing that point, we
find it necessary to further chronicle the unusual if not irregular procedural
history of this case which has culminated with the instant appeal, ordered by
the Texas Court of Criminal Appeals.

            A.        1992 Post-Conviction

            As mentioned earlier, Waites was
represented at trial by retained counsel, Knowles.  Following Waites’ conviction, Knowles filed a
motion for new trial and notice of appeal. 
The notice of appeal was filed June 12, 1992.  When no reporter’s record was filed, we
ordered the trial court to hold a hearing on the matter.   

            The
trial court held a hearing on December 18, 1992.  Knowles and Waites participated via
telephone, although none of Waites’ replies could be heard by the court
reporter and therefore were not transcribed. 
Knowles said that he had spoken to Waites’ mother, advising her of the
cost of a reporter’s record; she could not afford that record.  Knowles said he had only been paid $2,000.00
of the $7,500.00 he was supposed to have received for representing Waites at
trial.  Knowles went on to say,

And I also informed [Waites] that if the [trial]
Court would appoint me to represent him, that I would -- secure the Statement
of Facts, then that would be the only fee that I would request, if they paid
for the Statement of Facts, then I would proceed on with the appeal on his
behalf.  And also that in all likelihood
that an appeal would be a frivolous appeal to a certain extent because there was
[sic] very few errors that were made during the trial itself.  . . . . And [Waites’ mother] knows the
circumstances, and she doesn’t have the money to pay for the Statement of
Facts.  That was the only fee, I did not
ask for a fee, just that she pay for the Statement of Fact [sic].[6]

 

Later in the hearing, Knowles
says that he had discussed with Waites pursuing an appeal only based upon the
clerk’s record (“transcript”) and that Waites agreed to pursue that
strategy.  The trial court asked Waites
if this was correct; the reporter’s record states the court reporter could not
hear Waites’ reply.  The trial court then
asked Knowles for his “professional opinion” if Knowles felt “comfortable
appealing this case with the transcript only?” 
Knowles again voiced his opinion that “there was not an abundance of
errors that were committed during the trial” and Waites’ 

only recourse . . . is an appeal of the case on
the transcript itself, and I wouldn’t have any problems in appealing the trial
because I know the facts . . . from our pre-trial investigation or pre-trial
motions as well as the trial itself . . . there were very few as far as
reversible error[s] as far as the Statement of Facts would disclose, and I
would have no problem with appealing the case on the transcript itself.  

 

At that point, the trial court
clearly and specifically appointed Knowles as appellate counsel for Waites.  At the conclusion of the hearing, the trial
court summarized the testimony as follows: 
Waites indicated he wanted to appeal, had confidence in Knowles’
representation, and agreed to pursue his appeal based only on the clerk’s
record if that was what Knowles wanted to do. 
Curiously, though, even though he had just appointed Knowles to be
Waites’ appellate counsel, the trial court said he would “follow the
recommendation of Mr. Knowles, the attorney for the Defendant, Maceo
Waites, and will not order a Statement of Facts to be furnished at this time,
pending the further direction of the Court of Appeals on this matter.”  We also take note of the last thing said by
the trial court, that Waites had told the trial court that he “did want to
appeal his conviction, that he had confidence in his attorney, and he
basically, if Mr. Knowles wanted to appeal on the transcript only, that was
fine with him, and that he had no money with which to pay for the Statement of
Facts.”  

            Despite
being appointed by the trial court to represent Waites on appeal, Knowles never
filed an appellate brief with this Court. 
We issued an opinion stating we had reviewed the clerk’s record and
found no error.  Waites v. State, No. 06-92-090-CR (Tex. App.—Texarkana Mar. 9, 1993,
no pet.) (not designated for publication). 
Our mandate issued April 28, 1993.

            More
than fifteen years later, Waites filed an application for writ of habeas corpus
in the Texas Court of Criminal Appeals, which eventually led to the instant
out-of-time appeal.  Incident to the
application for habeas relief, and before the out-of-time appeal was ordered,
Waites filed in the trial court a motion for production of certain records.  We point out that in this motion, Waites did
not request a reporter’s record of the trial. 

            B.        Rule 34.6

            Waites
cites Rule 34.6(f) of the Texas Rules of Appellate Procedure and argues he is
entitled to a new trial.  That rule
states:

An appellant is entitled to a new
trial under the following circumstances:

(1)        if
the appellant has timely requested a reporter’s record;

(2)        if,
without the appellant’s fault, a significant exhibit or a significant portion
of the court reporter’s notes and records has been lost or destroyed . . . . ;

(3)        if
the lost [or] destroyed . . . portion of the reporter’s record . . . is
necessary to the appeal’s resolution; and 

(4)        if
the lost [or] destroyed . . . portion of the reporter’s record cannot be
replaced by agreement of the parties . . . .

 

Tex.
R. App. P. 34.6(f).   

            In
his final point of error, Waites complains that the reporter’s record is
incomplete.  Some testimony from State’s
witness Rand, and all of the testimony from State’s witness Dr. Patricia
Sanders, could not be transcribed in the reporter’s record.  From our review, it appears the following
occurred with regard to these two witnesses: 
the State called Rand to testify. 
Rand described the events summarized above:  Rand was with Martin, who was repairing a
truck; Waites came out of the woods, with a pistol and a large wad of cash;
Waites gave the money to Rand and told him to give it to Waites’ mother.  Rand testified that Waites gave him the money
with the instructions, “give this money to mamma, and tell her I didn’t leave
her out.”  Rand denied being part of the
robbery.  At about this point, the
reporter’s record states that a recess was taken and another court reporter
recorded the next part of the trial.  It
appears, and the parties here seem to agree, that any further examination of
Rand, including cross-examination, and the entire testimony of Sanders, was
recorded by this substitute court reporter. 
Sixteen years later, in the instant proceedings, neither that substitute
court reporter nor her notes or recordings can be located.  

            C.        Record
Request Was Timely

            We
find Waites’ request for a reporter’s record is timely.  On December 1, 2008, when Waites filed his
application for habeas corpus relief with the Texas Court of Criminal Appeals,
he also filed in the trial court a motion for production of records, requesting
the “Clerk of Marion County, Texas . . . produce the record/transcript of the
Hearings which were held pursuant to the order(s) of the Court of Appeals.”  That request would not qualify as a request
for the reporter’s record.  Waites did
not formally request the reporter’s record of the trial until May 8, 2009,
shortly after the Texas Court of Criminal Appeals issued its order for this
out-of-time appeal.[7]  The Texas Court of Criminal Appeals’ order of
May 6, 2009, decreed that the appellate timetables for Waites’ out-of-time
appeal would begin to run from the date of that court’s mandate, which issued
June 4, 2009.  Therefore, his request for
a reporter’s record was timely.  See Banks
v. State, Nos. 05-05-01050-CR–05-05-01056-CR, 2008 WL 5179898 (Tex.
App.—Dallas Dec. 11, 2008, pets. ref’d [2 pets.]) (where appellant granted
out-of-time appeal by Texas Court of Criminal Appeals, appellate timetables
reset to begin at date of Texas Court of Criminal Appeals’ mandate; record
request timely for purposes of Rule 34.6(f)) . 

            D.        Incomplete Record Due to Waites’ Lack of
Diligence

            To
qualify for relief under Rule 34.6(f), an appellant must next demonstrate that “without
the appellant’s fault, a significant exhibit or a portion of the court reporter’s
notes and records has been lost or destroyed . . . .”  Tex.
R. App. P. 34.6(f)(2).  Under the
circumstances of this case, we find that Waites failed to exercise diligence to
secure a full reporter’s record, and accordingly, he is not without fault. 

            As
summarized above, Waites agreed post-trial to pursue an appeal based only on
the clerk’s record.  He did nothing for
more than fifteen years to secure a full reporter’s record of his trial.  As discussed in the preceding section, no
request for a reporter’s record of the trial was made until May 8, 2009, by
Waites’ appointed counsel—counsel whom Waites later insisted on discharging so
that he could proceed pro se on this instant appeal.  As detailed above, the reporter’s record was
fortuitously discovered by the court reporter, albeit missing part of Rand’s
testimony and the testimony of Sanders.  

            A
defendant is not entitled to a reporter’s record as a matter of right.  Instead, at every stage of trial, a defendant
must exercise some diligence to ensure that a record of any error will be
available in the event that an appeal is necessary.  Alvear
v. State, 25 S.W.3d 241, 244 (Tex. App.—San Antonio 2000, no pet.) (citing Piotrowski v. Minns, 873 S.W.2d 368, 370
(Tex. 1993)).  Not only did Waites
acquiesce to proceeding on appeal without a reporter’s record, he has produced
nothing to show he sought, over the intervening fifteen years, to secure a
record.  There is no indication he
requested the court reporter to retain the notes from trial.  See
Tex. Gov’t Code Ann. §
52.046(a)(4) (Vernon 2005) (on request of party, court reporter must keep notes
from trial for three years; statute in effect at time of Waites’ trial was same
as in effect as of this writing). 
Further, even if Waites were to assert that he had not appealed his
conviction (an assertion he does not make and which we entertain only for
argument’s sake[8]),
the notes are only to be retained for fifteen years.  Tex.
R. App. P. 13.6 (where no appeal taken, in applicable circumstances,
reporter to file trial notes with clerk of court, who only must retain notes
for fifteen years; former Rule 11, applicable at the time of Waites’ trial,
likewise required keeping the trial notes for fifteen years where no appeal was
taken and other conditions met.  See former Tex. R. App. P. 11(d)).  


            In
Corley v. State, 782 S.W.2d 859 (Tex.
Crim. App. 1989), the State filed a motion to revoke Corley’s probation ten
years after he entered his plea.  Id. at 859–60.  Corley’s probation was revoked, and he
appealed.  Id. at 860.  His sole issue
on appeal revolved around whether he was entitled to a transcription of the
original plea hearing, but the transcript had been destroyed.  Id.  The appellate court held that Corley was
entitled to a statement of facts, and because it had been destroyed through no
fault of his own, Corley was entitled to a new trial.  Id.  The Texas Court of Criminal Appeals reversed,
however, declining to read Rule 50(e) of the Texas Rules of Appellate Procedure
(now Rule 34.6(f)) so broadly as to allow Corley a new trial.  Id.
at 861.  The court held that “an attempt
by appellant to designate the statement of facts from the original plea hearing
to be a part of the record on appeal . . . is untimely when made after the
court reporter has properly destroyed her notes.”  Id.[9]

            In
Alvear, Alvear claimed his conviction
for felony DWI was not properly supported by prior DWI[10]
convictions, because one of those prior convictions, from 1984, involved an
involuntary plea by Alvear.  25 S.W.3d at
244.  Finding no indication Alvear had
done anything in the intervening fifteen years to secure the reporter’s record,
the San Antonio court of appeals found Alvear’s request for the record
untimely, and therefore, he did not qualify for relief under Rule 34.6(f).  Id.
at 245.  

            As
we noted above, we feel constrained to find Waites’ request for the record was
timely, due to the Texas Court of Criminal Appeals’ order that the appellate
timetables should be reset to begin with the date of that court’s mandate.  However, we find the comparison to Corley and Alvear useful.   

            First,
in Corley, the Texas Court of
Criminal Appeals pointed out that under the circumstances of that case, if
Corley were granted a new trial as he sought, that result would conflict with
Section 52.046 of the Texas Government Code and have the result that each time
a defendant’s community supervision is revoked after a three-year period, the
defendant would automatically be entitled to a new trial even though the court
reporter’s notes have been properly destroyed. 
Corley, 782 S.W.2d at
861.  Waites has presented a similar
situation.  The time for the reporter to
have either kept the trial records or stored them with the trial court clerk
has long since passed, and the fault for this delay must be borne by Waites.    

            We
also take note of the appellate court holding in Alvear, which pointed out there was no indication Alvear had done
anything in the intervening fifteen years to preserve the reporter’s
record.  Both Corley and Alvear found
the respective appellants’ request for records untimely.  Arguably, as we have said earlier, Waites’
request was timely because the Texas Court of Criminal Appeals reset the
appellate timetables.  Nevertheless, we
find Waites to be at fault because he did nothing for over more than fifteen
years—from April 28, 1993, the date of the mandate of this Court’s opinion,
until December 1, 2008, when he first applied for habeas relief to the Texas
Court of Criminal Appeals.  Like Alvear,
Waites did nothing for more than fifteen years to secure a reporter’s
record.  In December 1992, he told the
trial court he concurred in his counsel’s decision to pursue an appeal without
a statement of facts/reporter’s record.[11]  And finally, similar to the reasoning in Corley, were we to grant relief to
Waites now, we would tacitly be encouraging defendants who had not appealed to “wait
out the clock,” that is, wait for the requirements of either Section 52.046 of
the Texas Government Code or Rule 13.6 of the Texas Rules of Appellate
Procedure to expire, then claim the right to a new trial.  This would amount to an abuse of the judicial
system. 

            We
find that Waites must bear responsibility for the missing section of the
reporter’s record, and he has not established himself entitled to relief under
Rule 34.6(f).  We overrule his final
point of error and affirm the conviction. 


 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          May
12, 2010

Date Decided:             June
18, 2010

 

Do Not Publish











[1]The
trial took three days, including voir dire.

 





[2]Waites’
trial and initial appeal predated the 1997 amendments to the Texas Rules of
Appellate Procedure.  Formerly, the
reporter’s record was referred to as the statement of facts and the clerk’s
record was called the transcript.  Those
terms were used in our 1993 opinion; we will generally use the terms
“reporter’s record” and “clerk’s record” in this opinion, but on some
occasions, the earlier terms are used, especially where witnesses are quoted. 





[3]It
is true that at the conclusion of a hearing held on Waites’ motion to suppress
the statement, the trial court found the statement was made voluntarily and the
court “admit[ted] [the statement] into evidence in this case” and further ruled
“it will be admitted before the jury in this case.”  As stated above, though, the statement was
not offered or admitted before the jury; it does not appear in the trial
exhibits, and there is no indication it was discussed before the jury or shown
to the jury.   





[4]In
his brief, Waites points to the next part of the State’s argument, where he
said Waites’ argument that law enforcement “went out there and put this stuff
out here, and put it in the woods, and then brought [Waites] to it” angered the
prosecutor.  Because Waites lodged no complaint
to these comments, we will not consider them as part of Waites’ appellate
complaint. 





[5]“Is
that what our probation laws were meant for? 
That a person who would rape a child, would come down here–forcibly rape, where her
vagina is lacerated and get probation? 
Surely that’s not the case.  I
mean, it can’t be.  It can’t be as long
as I stand here in front of people like yourselves.  It just can’t be the case.  I’m sure that I don’t live in a community
where people feel like that either.”  Wilson, 581 S.W.2d at 666. 





[6]Later
in the hearing, the trial court appointed Knowles to represent Waites on
appeal.  But the issue of the reporter’s
record, or statement of facts, being provided for Waites is never
addressed.  An indigent appellant is
entitled to appointed counsel and a record of the trial proceedings.  This was the law in the 1990s after Waites’
conviction as well as today.  See Tex.
Code Crim. Proc. Ann. art. 1.051 (Vernon Supp. 2009); Newman v. State, 937 S.W.2d 1 (Tex.
Crim. App. 1996); former Tex. R. App. P.
53(j)(2).  





[7]All
of which is moot, though; at the hearing ordered by the Texas Court of Criminal
Appeals in March 2009, the prosecutor told the trial court he had spoken with
the court reporter, who felt sure she had destroyed the record as more than
fifteen years had passed.  In April 2009,
though, the reporter came across records in a storage building and set out to
generate the reporter’s record.  





[8]The
Texas Court of Criminal Appeals’ order, which allowed Waites’ out-of-time
appeal, did not mention our opinion of March 1993; it is not clear if that
court was under the impression no appellate review had ever occurred.  That order “returned (Waites) to that time at
which he may give a written notice of appeal so that he may then, with the aid of
counsel, obtain a meaningful appeal.” 
Thus, even if the Texas Court of Criminal Appeals was aware of our March
1993 opinion and deemed that appeal not “meaningful,” it could be said Waites
had not appealed and thereby fall under the purview of Rule 13.6 of the Texas
Rules of Appellate Procedure.  Even in
that situation, though, the time for the reporter’s record to have been
preserved has passed. 





[9]We
acknowledge there is no evidence here the missing record has been “properly
destroyed.”  All that is present in this
case is that the primary reporter assumed the record had been destroyed, as
fifteen years since the conviction had passed; the record was only discovered
fortuitously, and the primary reporter could not locate the substitute reporter
who recorded the missing sections. 
However, as we have pointed out, the records would have been properly
destroyed by the time Waites requested them, under either the Texas Government
Code or the Texas Rules of Appellate Procedure. 

 





[10]See Tex.
Penal Code Ann. § 49.04 (Vernon 2003), § 49.09 (Vernon Supp. 2009).





[11]We
are not unmindful of the incongruities found in the actions of Waites’ trial
attorney.  The attorney was appointed by
the trial court to represent Waites on appeal, but still seemed to act as if
Waites was responsible for paying for the reporter’s record.  We do not understand why the trial court did
not simply order a record produced, unless he was relying on Waites’ statement
at the December 1992 hearing that he was satisfied in basing his appeal on the
clerk’s record alone.  None of this explains
why counsel still did not file an appellate brief despite this Court’s
admonishments in 1992.  However, while
Waites did present a claim of ineffective assistance of counsel in his habeas
application to the Texas Court of Criminal Appeals, he has made no such claim
in the instant appeal.